**FORRESTER, WORTH & GREEN, PLLC**
3636 NORTH CENTRAL AVENUE, SUITE 700
PHOENIX, ARIZONA 85012-1927
TELEPHONE (602) 271-4250
FACSIMILE (602) 271-4300
S. CARY FORRESTER (006342)
E-MAIL SCF@FWLAWAZ.COM
KRISTEN M. GREEN (019802)
E-MAIL KMG@FWGLAWYERS.COM

ATTORNEYS FOR THE DEBTOR

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 |
| NUTRACEA, a California corporation, | 2:09-bk-28817-CGC |
| Debtor. | **DEBTOR'S APPLICATION FOR APPROVAL OF EMPLOYMENT OF WILLIM CADIGAN AND TATUM, LLC PURSUANT TO 11 U.S.C. § 328** |

Pursuant to 11 U.S.C. § 328, Debtor NutraCea, a California corporation ("**Debtor**"), hereby submits its Application for Approval of Employment of William Cadigan and Tatum, LLC (this "**Application**"), effective as of the bankruptcy filing. Mr. Cadigan, who is and will be employed through Tatum, currently serves as vice president of finance and may be promoted to CFO in the near future. In support of this Application, Debtor represents as follows:

1. On or about March 18, 2009, Debtor entered into an Interim Services Agreement (the "**ISA**") with Tatum, LLC ("**Tatum**"). The ISA was supplemented by two schedules dated March 18, 2009, and April 1, 2009 (together, the "**First ISA**"), pursuant to which Tatum agreed to provide the services of two Interim Financial Reporting Managers: Daniel Beckett and Sandra Ribble. Debtor agreed to pay $170 per hour for the services of Beckett and Ribble. It also agreed that, if it hired either of them directly within one year after the termination of the First ISA, it

would pay liquidated damages, which Debtor estimates at not less than $163,200. A true and correct copy of the First ISA is attached hereto as a part of Exhibit "A".

2. On or about July 26, 2009, Debtor entered into a second Interim Services Agreement with Tatum ("**Second ISA**"), pursuant to which Tatum agreed to provide the services of William Cadigan, as vice president of finance. Debtor agreed to pay Tatum $25,000 per month for Cadigan's services, plus reimbursement of expenses, payable in advance on a monthly basis. It further agreed to pay liquidated damages, which the Debtor estimates at no less than $150,000, if it hired Cadigan directly within one year after the termination of the Second ISA. A true and correct copy of the Second ISA is attached hereto as a part of Exhibit "A".

3. On or about November 2, 2009, Debtor sought to hire Beckett directly, in order to dramatically reduce the costs of his services. It sought Tatum's consent because, without it, it would be exposed to a liquidated damages claim. The Debtor proposed to hire Beckett at an annual salary of $130,000. It had been paying Tatum approximately $35,000 per month for his services. This amounts to an annual savings of $290,000.

4. At the same time, it sought a waiver of the overdue amounts that it owed Tatum for Beckett's services: approximately $56,000. It needed the waiver so that it could continue to employ Cadigan, through Tatum, after its bankruptcy filing. Without such a waiver, Tatum would not be "disinterested" within the meaning of Section 327(a) of the Bankruptcy Code.

5. Eventually the parties agreed that Debtor would pay Tatum a placement fee of $30,000 for Beckett's release from the First ISA, and would increase the monthly fee for Cadigan's services under the Second ISA from $25,000 to $32,500. These agreements are memorialized in the Placement Agreement dated November 2, 2009, and the Amendment to the Second ISA, dated November 1, 2009. True and correct copies of the Placement Agreement and the Amendment to the Second ISA are attached hereto as Exhibit "B".

6.     As a result, Debtor was able to retain the services of both Beckett and Cadigan at an annualized savings of approximately $170,000, even after paying the placement fee and the increased fee for Cadigan's services.

7.     On November 10, 2009 (the "**Petition Date**"), Debtor filed its voluntary petition under chapter 11 of the United States Bankruptcy Code.

8.     Debtor is in need of Cadigan's services as vice president of finance.  The parties also contemplate that he may be promoted to CFO in the near future.  Accordingly, Debtor desires to employ Tatum on behalf of the estate.

9.     Debtor believes that Tatum and Mr. Cadigan are qualified to provide such services pursuant to Bankruptcy Code § 328.

10.     Tatum has agreed to continue to provide Cadigan's services at the rate set forth in the amended Second ISA, subject to Bankruptcy Court approval.

11.     Tatum does not hold or represent any interest adverse to Debtor or the estate and is disinterested within the meaning of Bankruptcy Code § 328.

12.     Accordingly, Debtor seeks to employ Tatum to provide the services of an interim financial officer, with compensation for such services to be determined and paid in accordance with the Second ISA and 11 U.S.C. § 328.

WHEREFORE, Debtor requests that the Court approve this Application to employ Tatum, and through it William Cadigan, to provide the services of a interim vice president of finance, with the possibility of his promotion to interim CFO, effective as of November 10, 2009, and that it authorize the Debtor to compensate Tatum at the rate of $32,500 per month, plus reimbursement of expenses, payable monthly in advance, pursuant to 11 U.S.C. § 328, and that such compensation be subject to adjustment only if it proves to have been improvident in light of developments not capable of being anticipated at this time.

DATED this 18th day of November, 2009.

FORRESTER, WORTH & GREEN, PLLC


By: _SCF (006342)_____
S. Cary Forrester
Kristen M. Green
Attorneys for Debtor

Copy emailed or mailed this 18th day of
November, 2009, to all those on the
attached service list:


/s/ Mary L. Ligouri
Mary L. Ligouri



*Create more value.*

# Interim Services Agreement

March 17, 2009

Ms. Olga Hernandez-Longan
Chief Financial Officer
NutraCea
5090 North 40ᵗʰ Street
Phoenix, AZ 85018

Dear Olga:

Tatum, LLC ("Tatum," "we," "us" or "our") is pleased that NutraCea ("Company," "you," or "your") has selected us to provide you with outsourced interim services. The services (the "Services") and fees will be more particularly described on the Schedule attached hereto and will be provided by the individual resource (the "Tatum Resource") identified on such Schedule. Schedules for additional Tatum Resources may be added from time to time upon the mutual written agreement of the parties. In addition, upon the request of the Company and the execution of an additional Schedule to this agreement, Tatum will provide search Services to the Company, all as more particularly described on such Schedule.

**Engagement.** The Tatum Resource will be one of Tatum's employees or members, and we will be solely responsible for determining the conditions, terms and payment of compensation and benefits for the Tatum Resource. You will be solely responsible for providing the Tatum Resource day-to-day guidance, supervision, direction, assistance and other information necessary for the successful and timely completion of the Services. Tatum will have no oversight, control, or authority over the Tatum Resource with respect to the Services. The Company acknowledges that it is solely responsible for the sufficiency of the Services for its purposes. The Company will designate a management-level individual to be responsible for overseeing the Services, and the Tatum Resource will report directly to such individual with respect to the provision of the Services. Unless the Tatum Resource is acting as an executive officer of the Company and is authorized by the Company to make such decision, the Company will not permit or require the Tatum Resource to be the ultimate decision making authority for any material decision relating to your business, including, without limitation, any proposed merger, acquisition, recapitalization, financial strategy or restructuring.

**Fees and Expenses.** You will pay us the fees set forth on the applicable Schedule. In addition to our standard professional service fees, we will charge an administrative fee equal to 5% of our professional service fees, which covers ancillary administrative costs such as technology, communication, and supplies. In addition, you will reimburse Tatum directly for all travel and out-of-pocket expenses incurred in connection with this agreement (including any Schedules).

**Payment Terms.** Payments to Tatum should be made upon receipt of invoice by electronic transfer in accordance with the instructions set forth below or such alternative instructions as provided by us from time to time. Any amounts not paid when due may be subject to a periodic service charge equal to the lesser of 1.5% per month and the maximum amount allowed under applicable law, until such amounts are paid in full, including assessed service charges. In lieu of terminating this agreement, we may suspend the provision of any Services if amounts owed are not paid in accordance with the terms of this agreement.

Bank Name: Wells Fargo, N.A.
Branch: San Francisco
Account Name: Tatum, LLC
Account Number: 4121546642
Routing Number for ACH Payments: 121000248
Swift Code: WFBIUS6S

Please reference Company name in the body of the payment.

**Effective Date and Termination.** This agreement will be effective as of the earlier of (i) the date Tatum begins providing Services to the Company, and (ii) the date of the last signature to this agreement as indicated on the signature page. Either party may terminate this agreement or any Schedule effective immediately upon written notice to the other party.

**Hiring the Tatum Resource Outside of a Tatum Agreement.** During the time frame in which the Tatum Resource is providing Services to the Company and for a period of 12-months thereafter, other than in connection with this agreement or another Tatum agreement, the Company agrees that it will not nor will its subsidiaries or affiliates employ such Tatum Resource, or engage such Tatum Resource as an independent contractor. The parties recognize and agree that a breach by the Company or its subsidiaries or affiliates of this provision would result in the loss to Tatum of the Tatum Resource's valuable expertise and revenue potential and that such injury will be impossible or very difficult to ascertain. Therefore, in the event this provision is breached, the Company will pay Tatum liquidated damages in an amount equal to 50% of Tatum's Annualized Fees (as defined below), which amount the parties agree is reasonably proportionate to the probable loss to Tatum and is not intended as a penalty. If a court or arbitrator determines that liquidated damages are not appropriate for such breach, Tatum will have the right to seek actual damages and/or injunctive relief. "Annualized Fees" means the equivalent of what Tatum would receive under this agreement for the Tatum Resource on a full-time annual basis plus the maximum amount of any bonus for which Tatum was eligible with respect to the then-current bonus year for the Tatum Resource.

**Warranties and Disclaimers.** We disclaim all representations and warranties, whether express, implied or statutory, including, but not limited to any warranties of quality, performance, merchantability, or fitness of use or purpose. Without limiting the foregoing, we make no representation or warranty with respect to the Tatum Resource or the Services provided hereunder, and we will not be responsible for any action taken by you in following or declining to follow any of the Tatum Resource's advice or recommendations. The Services provided by Tatum and the Tatum Resource hereunder are for the sole benefit of the Company and not unnamed third parties. The Services will not constitute an audit, review, opinion, or compilation, or any other type of financial statement reporting or attestation engagement that is subject to the rules of the AICPA or other similar state or national professional bodies or laws and will not result in an opinion or any form of assurance on internal controls.

**Limitation of Liability; Indemnity.**

(a) Tatum's liability in any and all categories and for any and all causes arising under this agreement, whether based in contract, tort, negligence, strict liability or otherwise, will, in the aggregate, not exceed the actual fees paid by you to us over the previous two months' of the agreement with respect to the Tatum Resource from whom the liability arises. In no event will we be liable for incidental, consequential, punitive, indirect or special damages, including, without limitation, interruption or loss of business, profit or goodwill. As a condition for recovery of any liability, you must assert any claim against us within three months after discovery or 60 days after the termination or expiration of the applicable Schedule under which the liability arises, whichever is earlier.

(b) You agree to indemnify us and the Tatum Resource to the full extent permitted by law for any losses, costs, damages, and expenses (including reasonable attorneys' fees), as they are incurred, in

connection with any cause of action, suit, or other proceeding arising in connection with the Tatum Resource's services to you.

## Insurance.

If the Tatum Resource is serving as an officer or executive of the Company, the Company will provide Tatum or the Tatum Resource with written evidence that the Company maintains directors' and officers' insurance covering the Tatum Resource in an amount reasonably acceptable to the Tatum at no additional cost to the Tatum Resource, and the Company will maintain such insurance at all times while this agreement remains in effect. Furthermore, the Company will maintain such insurance coverage with respect to occurrences arising during the term of this agreement for at least five years following the termination or expiration of the applicable Schedule or will purchase a directors' and officers' extended reporting period or "tail" policy to cover the Tatum Resource for such five year time period.

## Distressed Company.

The Company acknowledges to Tatum and the Tatum Resources that, as of the date of this agreement, it is -- and has been for a considerable period of time -- in dire financial condition, having suffered extensive losses, negative EBITDA, and insufficient cash-flow.

## Governing Law, Arbitration and Witness Fees.

(a)     This agreement will be governed by and construed in accordance with the laws of the State of Georgia, without regard to conflicts of laws provisions.

(b)     If the parties are unable to resolve any dispute arising out of or in connection with this agreement, the parties agree and stipulate that any such disputes will be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA"). The arbitration will be conducted in the Atlanta, Georgia office of the AAA by a single arbitrator selected by the parties according to the rules of the AAA, and the decision of the arbitrator will be final and binding on both parties. In the event that the parties fail to agree to the selection of the arbitrator within 30 days after either party's request for arbitration under this Section, the arbitrator will be chosen by the AAA. The arbitrator may in his or her discretion order documentary discovery but will not allow depositions without a showing of compelling need. The arbitrator will render his or her decision within 90 days after the call for arbitration. Judgment on the award of the arbitrator may be entered in and enforced by any court of competent jurisdiction. The arbitrator will have no authority to award damages in excess or in contravention of this agreement and may not amend or disregard any provision of this agreement, including this section. Notwithstanding the foregoing, either party may seek appropriate injunctive relief from any court of competent jurisdiction, and Tatum may pursue payment of undisputed amounts through any court of competent jurisdiction.

(c)     In the event any member or employee of Tatum (including, without limitation, any Tatum Resource) is requested or authorized by you or is required by government regulation, subpoena, or other legal process to produce documents or appear as witnesses in connection with any action, suit or other proceeding initiated by a third party against you or by you against a third party, you will, so long as Tatum is not a party to the proceeding in which the information is sought, reimburse Tatum for its member's or employee's professional time (based on customary rates) and expenses, as well as the fees and expenses of its counsel, incurred in responding to such requests.

## Miscellaneous.

(a)     This agreement together with all Schedules constitutes the entire agreement between the parties with regard to the subject matter hereof and supersedes any and all agreements, whether oral or written, between the parties with respect to its subject matter. No amendment or modification to this agreement will be valid unless in writing and signed by both parties.

(b)     If any portion of this agreement is found to be invalid or unenforceable, such provision

will be deemed severable from the remainder of this agreement and will not cause the invalidity or unenforceability of the remainder of this agreement, except to the extent that the severed provision deprives either party of a substantial portion of its bargain.

(c)     Neither party will be deemed to have waived any rights or remedies accruing under this agreement unless such waiver is in writing and signed by the party electing to waive the right or remedy. The waiver by any party of a breach or violation of any provision of this agreement will not operate or be construed as a waiver of any subsequent breach or violation of such provision or any other provision of this agreement.

(d)     Neither party will be liable for any delay or failure to perform under this agreement (other than with respect to payment obligations) to the extent such delay or failure is a result of an act of God, war, earthquake, civil disobedience, court order, labor dispute, or other cause beyond such party's reasonable control.

(e)     You may not assign your rights or obligations under this agreement without the express written consent of Tatum. Nothing in this agreement will confer any rights upon any person or entity other than the parties hereto and their respective successors and permitted assigns and the Tatum Resources.

(f)     The expiration or termination of this agreement or any Schedule will not destroy or diminish the binding force and effect of any of the provisions of this agreement or any Schedule that expressly, or by reasonable implication, come into or continue in effect on or after such expiration or termination, including, without limitation, provisions relating to payment of fees and expenses (including witness fees and expenses and liquidated damage fees), governing law, arbitration, limitation of liability and indemnity.

(g)     You agree to reimburse Tatum for all costs and expenses incurred by Tatum in enforcing collection of any monies due under this agreement, including, without limitation, reasonable attorneys' fees, court costs and arbitration fees.

(h)     You agree to allow us to use the Company's logo and name on Tatum's website and other marketing materials for the sole purpose of identifying the Company as a client of Tatum. Tatum will not use the Company's logo or name in any press release or general circulation advertisement without the Company's prior written consent.

We appreciate the opportunity to serve you and believe this agreement accurately reflects our mutual understanding of the terms upon which the Services will be provided. We would be pleased to discuss this agreement with you at your convenience. If the foregoing is in accordance with your understanding, please sign a copy of this agreement and return it to my attention.

Sincerely,

Tatum, LLC

*John R. Scherer*

**John R. Scherer**

**Associate Managing Partner, Phoenix**

Accepted and agreed:

**NutraCea**

By: _____

Name: **Olga Hernandez-Longan**

Title:    Chief Financial Officer

Date: 3-18-09



Create more value.

## Schedule to Interim Services Agreement

This Schedule is entered into in connection with that certain Interim Services Agreement, dated March 17, 2009 (the "Agreement"), by and between Tatum, LLC ("Tatum," "we," "us" or "our") and **NutraCea** ("Company," "you" or "your") and will be governed by the terms and conditions of the Agreement.

**Tatum Principal Resources Names:** Dan Beckett

**Job Title:** Interim Financial Reporting Managers

**Company Supervisor:** Chief Financial Officer

**Start Date:** March 19, 2009

**End Date:** On or about June 26, 2009

**Minimum Term:** Three calendar months from the start date

**Replacement:** If you are dissatisfied with the Services provided by the Tatum Resource, we will immediately remove the Tatum Resource and endeavor to furnish a replacement as soon as reasonably practical. We do not guarantee that we will be able to find a suitable replacement. If you notify us of your dissatisfaction with the Services provided by the Tatum Resource prior to the conclusion of the Tatum Resource's third day of work, we will not charge you for the first 16 hours worked by the Tatum Resource.

**Fees:** You will pay to Tatum a fee of $170 per hour per Tatum Principal Resource. Assuming the contract would extend beyond one year, the fees will automatically increase on an annual basis commencing with the first anniversary of this Agreement in an amount equal to 6% per year. To the extent that the Associate Managing Partner is required to devote time to this project and upon prior approval by the client, those hours will be billed at $275 per hour.

The parties acknowledge and agree that the fees set forth above are based upon this Schedule having the Minimum Term set forth above. In the event you terminate this Schedule prior to the expiration of the Minimum Term other than for the Tatum Resource's material failure to perform the obligations of his or her position with the Company, provided the Tatum Resource fails to cure such breach within 10 days after receipt of written notice of such breach, you agree that the fees will be retroactively increased to $250 per hour. You agree to pay to Tatum upon the termination of this Schedule a lump sum amount equal to the difference between the fees actually paid and the fees that should have been paid taking into account the retroactive adjustment.

**Billings:** Tatum will bill for two weeks of Services in advance of the provision of Services as follows:

- **Upon Execution of Agreement: $14,000**
- Invoicing Frequency: Weekly based on hours worked.

**Billing Expenses:** As applicable, each week Tatum will bill expenses incurred the prior week. Payment will be due upon receipt of invoice.

In the event of a conflict between the terms and conditions of this Schedule and the Agreement, the terms and conditions of the Agreement will control.



**Tatum**, LLC
*Create more value.*

By:

Name: John R. Scherer
Title: Associate Managing Partner, Arizona
Date: March 17, 2009

**NutraCea**

By:

Name: Olga Hernandez-Longan
Title: Chief Financial Officer
Date: 3-18-09


Tatum™
Create more value.

## Schedule to Interim Services Agreement

This Schedule is entered into in connection with that certain Interim Services Agreement, dated March 17, 2009 (the "Agreement"), by and between Tatum, LLC ("Tatum," "we," "us," or "our") and NutraCea ("Company," "you" or "your") and will be governed by the terms and conditions of the Agreement.

**Tatum Principal Resources Names:** Sandra Ribble

**Job Title:** Interim Financial Reporting Manager

**Company Supervisor:** Chief Financial Officer

**Start Date:** April 4, 2009

**End Date:** On or about June 26, 2009

**Minimum Term:** About 2 ½ calendar months

**Replacement:** If you are dissatisfied with the Services provided by the Tatum Resource, we will immediately remove the Tatum Resource and endeavor to furnish a replacement as soon as reasonably practical. We do not guarantee that we will be able to find a suitable replacement. If you notify us of your dissatisfaction with the Services provided by the Tatum Resource prior to the conclusion of the Tatum Resource's third day of work, we will not charge you for the first 16 hours worked by the Tatum Resource.

**Fees:** You will pay to Tatum a fee of $170 per hour per Tatum Principal Resource. Assuming the contract would extend beyond one year, the fees will automatically increase on an annual basis commencing with the first anniversary of this Agreement in an amount equal to 6% per year. To the extent that the Associate Managing Partner is required to devote time to this project and upon prior approval by the client, those hours will be billed at $275 per hour.

The parties acknowledge and agree that the fees set forth above are based upon this Schedule having the Minimum Term set forth above. In the event you terminate this Schedule prior to the expiration of the Minimum Term other than for the Tatum Resource's material failure to perform the obligations of his or her position with the Company, provided the Tatum Resource fails to cure such breach within 10 days after receipt of written notice of such breach, you agree that the fees will be retroactively increased to $250 per hour. You agree to pay to Tatum upon the termination of this Schedule a lump sum amount equal to the difference between the fees actually paid and the fees that should have been paid taking into account the retroactive adjustment.

**Billings:** Tatum will bill for two weeks of Services in advance of the provision of Services as follows:

- **Upon Execution of Agreement: $14,000**

- Invoicing Frequency: Weekly based on hours worked.

**Billing Expenses:** As applicable, each week Tatum will bill expenses incurred the prior week. Payment will be due upon receipt of invoice.

In the event of a conflict between the terms and conditions of this Schedule and the Agreement, the terms and conditions of the Agreement will control.

**NutraCea**

By: _[signature]_

Name: Olga Hernandez-Longan
Title: Chief Financial Officer
Date: 4/1/09

Tatum, LLC

*Create more value.*



By: _[signature]_

Name: John R. Scherer
Title: Associate Managing Partner, Arizona
Date: March 31, 2009





Create more value.

# Interim Services Agreement

July 26, 2009

Mr. W. John Short
President
NutraCea
5090 North 40ᵗʰ Street
Phoenix, AZ 85018

Dear Mr. Short:

Tatum, LLC ("Tatum," "we," "us" or "our") is pleased that **NutraCea** ("Company," "you," or "your") has selected us to provide you with outsourced interim services. The services (the "Services") and fees will be more particularly described on the Schedule attached hereto and will be provided by the individual resource (the "Tatum Resource") identified on such Schedule. Schedules for additional Tatum Resources may be added from time to time upon the mutual written agreement of the parties. In addition, upon the request of the Company and the execution of an additional Schedule to this agreement, Tatum will provide search Services to the Company, all as more particularly described on such Schedule.

**Engagement.** The Tatum Resource will be one of Tatum's employees or members, and we will be solely responsible for determining the conditions, terms and payment of compensation and benefits for the Tatum Resource. You will be solely responsible for providing the Tatum Resource day-to-day guidance, supervision, direction, assistance and other information necessary for the successful and timely completion of the Services. Tatum will have no oversight, control, or authority over the Tatum Resource with respect to the Services. The Company acknowledges that it is solely responsible for the sufficiency of the Services for its purposes. The Company will designate a management-level individual to be responsible for overseeing the Services, and the Tatum Resource will report directly to such individual with respect to the provision of the Services. Unless the Tatum Resource is acting as an executive officer of the Company and is authorized by the Company to make such decision, the Tatum Resource will not permit or require the Tatum Resource to be the ultimate decision making authority for any material decision relating to your business, including, without limitation, any proposed merger, acquisition, recapitalization, financial strategy or restructuring.

**Fees and Expenses.** You will pay us the fees set forth on the applicable Schedule. In addition to our standard professional service fees, we will charge an administrative fee equal to 5% of our professional service fees, which covers ancillary administrative costs such as technology, communication, and supplies. In addition, you will reimburse Tatum directly for all travel and out-of-pocket expenses incurred in connection with this agreement (including any Schedules).

**Payment Terms.** Payments to Tatum should be made upon receipt of invoice by electronic transfer in accordance with the instructions set forth below or such alternative instructions as provided by us from time to time. Any amounts not paid when due may be subject to a periodic service charge equal to the lesser of 1.5% per month and the maximum amount allowed under applicable law, until such amounts are paid in full, including assessed service charges. In lieu of terminating this agreement, we may suspend the provision of any Services if amounts owed are not paid in accordance with the terms of this agreement.



Bank Name and Address: Silicon Valley Bank, 3003 Tasman Drive, Santa Clara, CA 95054
Beneficiary: Tatum, LLC
Beneficiary Account Number: 3300599791
ABA Transit/Routing Number: 121140399

Please reference Company name in the body of the payment.

**Effective Date and Termination.** This agreement will be effective as of the earlier of (i) the date Tatum begins providing Services to the Company, and (ii) the date of the last signature to this agreement as indicated on the signature page. Either party may terminate this agreement or any Schedule effective immediately upon written notice to the other party.

**Hiring the Tatum Resource Outside of a Tatum Agreement.** During the time frame in which the Tatum Resource is providing Services to the Company and for a period of 12-months thereafter, other than in connection with this agreement or another Tatum agreement, the Company agrees that it will not nor will its subsidiaries or affiliates employ such Tatum Resource, or engage such Tatum Resource as an independent contractor. The parties recognize and agree that a breach by the Company or its subsidiaries or affiliates of this provision would result in the loss of the Tatum Resource's valuable expertise and revenue potential and that such injury will be impossible or very difficult to ascertain. Therefore, in the event this provision is breached, the Company will pay Tatum liquidated damages in an amount equal to 50% of Tatum's Annualized Fees (as defined below), which amount the parties agree is reasonably proportionate to the probable loss to Tatum and is not intended as a penalty. If a court or arbitrator determines that liquidated damages are not appropriate for such breach, Tatum will have the right to seek actual damages and/or injunctive relief. "Annualized Fees" means the equivalent of what Tatum would receive under this agreement for the Tatum Resource on a full-time annual basis plus the maximum amount of any bonus for which Tatum was eligible with respect to the then-current bonus year for the Tatum Resource.

**Warranties and Disclaimers.** We disclaim all representations and warranties, whether express, implied or statutory, including, but not limited to any warranties of quality, performance, merchantability, or fitness of use or purpose. Without limiting the foregoing, we make no representation or warranty with respect to the Tatum Resource or the Services provided hereunder, and we will not be responsible for any action taken by you in following or declining to follow any of the Tatum Resource's advice or recommendations. The Services provided by Tatum and the Tatum Resource hereunder are for the sole benefit of the Company and any unnamed third parties. The Services will not constitute an audit, review, opinion, or compilation, or any other type of financial statement reporting or attestation engagement that is subject to the rules of the AICPA or other similar state or national professional bodies or laws and will not result in an opinion or any form of assurance on internal controls.

**Limitation of Liability; Indemnity.**

(a) Tatum's liability in any and all categories and for any and all causes arising under this agreement, whether based in contract, tort, negligence, strict liability or otherwise, will, in the aggregate, not exceed the actual fees paid by you to us over the previous two months' of the agreement with respect to the Tatum Resource from whom the liability arises. In no event will we be liable for incidental, consequential, punitive, indirect or special damages, including, without limitation, interruption or loss of business, profit or goodwill. As a condition for recovery of any liability, you must assert any claim against us within three months after discovery or 60 days after the liability arises or expiration of the applicable Schedule under which the liability arises, whichever is earlier.

(b) You agree to indemnify us and the Tatum Resource to the full extent permitted by law for any losses, costs, damages, and expenses (including reasonable attorneys' fees), as they are incurred, in connection with any cause of action, suit, or other proceeding arising in connection with the Tatum Resource's services to you.

**Insurance.**

If the Tatum Resource is serving as an officer or executive of the Company, the Company will provide Tatum or the Tatum Resource with written evidence that the Company maintains directors' and officers' insurance covering the Tatum Resource in an amount reasonably acceptable to the Tatum at no additional cost to the Tatum Resource, and the Company will maintain such insurance at all times while this agreement remains in effect. Furthermore, the Company will maintain such insurance coverage with respect to occurrences arising during the term of this agreement for at least five years following the termination or expiration of the applicable Schedule or will purchase a directors' and officers' extended reporting period or "tail" policy to cover the Tatum Resource for such five year time period.

**Distressed Company.**

The Company acknowledges to Tatum and the Tatum Resources that, as of the date of this agreement, it has, for a considerable period of time, suffered extensive losses and negative EBITDA.

**Governing Law, Arbitration and Witness Fees.**

(a)     This agreement will be governed by and construed in accordance with the laws of the State of Georgia, without regard to conflicts of laws provisions.

(b)     If the parties are unable to resolve any dispute arising out of or in connection with this agreement, the parties agree and stipulate that any such disputes will be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA"). The arbitration will be conducted in the Atlanta, Georgia office of the AAA by a single arbitrator selected by the parties according to the rules of the AAA, and the decision of the arbitrator will be final and binding on both parties. In the event that the parties fail to agree on the selection of the arbitrator within 30 days after either party's request for arbitration under this Section, the arbitrator will be chosen by the AAA. The arbitrator may in his or her discretion order documentary discovery but will not allow depositions without a showing of compelling need. The arbitrator will render his or her decision within 90 days after the call for arbitration. Judgment on the award of the arbitrator may be entered in and enforced by any court of competent jurisdiction. The arbitrator will have no authority to award damages in excess or in contravention of this agreement and may not amend or disregard any provision of this agreement, including this section. Notwithstanding the foregoing, either party may seek appropriate injunctive relief from any court of competent jurisdiction, and Tatum may pursue payment of any unpaid amounts due under this agreement through any court of competent jurisdiction.

(c)     In the event any member or employee of Tatum (including, without limitation, any Tatum Resource) is requested or authorized by you or is required by government regulation, subpoena, or other legal process to produce documents or appear as witnesses in connection with any action, suit or other proceeding initiated by a third party against you or by you against a third party, you will, so long as Tatum is not a party to the proceeding in which the information is sought, reimburse Tatum for its member's or employee's professional time (based on customary rates) and expenses, as well as the fees and expenses of its counsel, incurred in responding to such requests. This provision is in addition to and not in lieu of any indemnification obligations the Company may have under this agreement.

**Miscellaneous.**

(a)     This agreement together with all Schedules constitutes the entire agreement between the parties with regard to the subject matter hereof and supersedes any and all agreements, whether oral or written, between the parties with respect to its subject matter. No amendment or modification to this agreement will be valid unless in writing and signed by both parties.

(b)     If any portion of this agreement is found to be invalid or unenforceable, such provision will be deemed severable from the remainder of this agreement and will not cause the invalidity or

unenforceability of the remainder of this agreement, except to the extent that the severed provision deprives either party of a substantial portion of its bargain.

(c)     Neither party will be deemed to have waived any rights or remedies accruing under this agreement unless such waiver is in writing and signed by the party electing to waive the right or remedy. The waiver by any party of a breach or violation of any provision of this agreement will not operate or be construed as a waiver of any subsequent breach of such provision or any other provision of this agreement.

(d)     Neither party will be liable for any delay or failure to perform under this agreement (other than with respect to payment obligations) to the extent such delay or failure is a result of an act of God, war, earthquake, civil disobedience, court order, labor dispute, or other cause beyond such party's reasonable control.

(e)     You may not assign your rights or obligations under this agreement without the express written consent of Tatum. Nothing in this agreement will confer any rights upon any person or entity other than the parties hereto and their respective successors and permitted assigns and the Tatum Resources.

(f)     The expiration or termination of this agreement or any Schedule will not destroy or diminish the binding force and effect of any of the provisions of this agreement or any Schedule that expressly, or by reasonable implication, come into or continue in effect on or after such expiration or termination, including, without limitation, provisions relating to payment of fees and expenses (including witness fees and expenses and liquidated damage fees), governing law, arbitration, limitation of liability and indemnity.

(g)     You agree to reimburse Tatum for all costs and expenses incurred by Tatum in enforcing collection of any monies due under this agreement, including, without limitation, reasonable attorneys' fees, court costs and arbitration fees.

(h)     You agree to allow us to use the Company's logo and name on Tatum's website and name on Tatum's website and other marketing materials for the sole purpose of identifying the Company as a client of Tatum. Tatum will not use the Company's logo or name in any press release or general circulation advertisement without the Company's prior written consent.

We appreciate the opportunity to serve you and believe this agreement accurately reflects our mutual understanding of the terms upon which the Services will be provided. We would be pleased to discuss this agreement with you at your convenience. If the foregoing is in accordance with your understanding, please sign a copy of this agreement and return it to my attention.

Sincerely,

Tatum, LLC

*John R. Scherer*

John R. Scherer

Managing Partner, Arizona

Accepted and agreed:

**NutraCea**

By: _[signature]_

**Name: W. John Short**
Title: President
Date: 7/26/2007



# Tatum™
*Create more value.*

## Schedule to Interim Services Agreement

This Schedule is entered into in connection with that certain Interim Services Agreement, dated March 4, 2009 (the "Agreement"), by and between Tatum, LLC ("Tatum," "we," "us" or "our") and NutraCea ("Company," "you," or "your") and will be governed by the terms and conditions of the Agreement. 

**Tatum Resource Name:** William Cadigan

**Job Title:** VP Finance

**Company Supervisor:** President

**Start Date:** July 24, 2009

**Replacement:** If you are dissatisfied with the Services provided by the Tatum Resource, we will immediately remove the Tatum Resource and endeavor to furnish a replacement as soon as reasonably practical. We do not guarantee that we will be able to find a suitable replacement. If you notify us of your dissatisfaction with the Services provided by the Tatum Resource prior to the conclusion of the Tatum Resource's third day of work, we will not charge you for the first 16 hours worked by the Tatum Resource.

**Fees:** You will pay to Tatum a fee of $25,000 per month for the Tatum Resource. The fees will be prorated for the first and final fee period based on the number of days in such period. Assuming this Schedule extends beyond one year, the fees will automatically increase on an annual basis commencing with the first anniversary of this Schedule in an amount equal to 6% per year.

**Stock Options:** The Company will award 100,000 shares of stock options to the Tatum Resource at the closing price on July 24, 2009 pursuant to the terms and conditions of the NutraCea 2005 Equity Incentive Plan and an associated stock option agreement. 25,000 shares of options will vest with each one month anniversary of completed service by the Tatum Resource. The Tatum Resource will have 2 years to exercise the options. The Company understands that 30% of any proceeds from such options will go to Tatum.

**Billings:** For the Tatum Resource, Tatum will bill for Services in advance of the provision of such Services:

- Upon Execution of Agreement: $25,000 (inclusive of the 5% administrative fee) as advance payment for the first month of services.
- Invoicing Amount and Frequency: Each month thereafter, $25,000 (inclusive of the administrative fee) to be invoiced and paid in advance of services being performed.

As necessary, Tatum will true up advance billings with the next subsequent billing.



**Billing Expenses**: An estimate of monthly expenses (initially $4,500) will be paid by the Company to the Tatum Resource in advance on the first day of the month (reconciled to actual monthly expenses so documented each month) by electronic transfer directly to the Tatum Resource as follows:

William Cadigan
PNC Bank, N.A.
ABA Transit/Routing Number 031312738
Beneficiary: William Cadigan
Beneficiary Account: 5110639967

**Permanent Engagement**: You will have the opportunity to make the Tatum Resource a permanent, full-time member of the Company at any time during the term of this Schedule by entering into another form of Tatum agreement, the terms of which will be negotiated at such time.

In the event of a conflict between the terms and conditions of this Schedule and the Agreement, the terms and conditions of the Agreement will control.

Tatum, LLC                                                              NutraCea

By:

*John R. Scherer*

Name: John R. Scherer                                          By:
Title: Managing Partner, Arizona
Date: July 26, 2009                                               *Wax Short*

                                                                              Name: W. John Short
                                                                              Title: President
                                                                              Date: 7/26/2009



**PLACEMENT AGREEMENT**

November 2, 2009

NutraCea Inc.
5090 North 40th Street
Phoenix, Arizona 85018
Attention: W. John Short, Chief Executive Officer

Dear John:

This letter sets forth the agreement between NutraCea Inc. ("NutraCea") with respect to Tatum, LLC's ("Tatum") assistance with the placement of Daniel Beckett ("Beckett") as the Controller of NutraCea. The parties agree that effective as of the close of business on November 3, 2009, Beckett hereby resigns from Tatum and shall become an employee of NutraCea.

**Fees.** On November 4, 2009, Nutracea shall pay Tatum $30,000.00 by electronic transfer in accordance with the instructions set forth below. If payment is not received by Tatum on November 4, 2009, this agreement shall be null and void.

Receiving Bank: Silicon Valley Bank
Address: 3003 Tasman Drive, Santa Clara, CA 95054
ABA Transit/Routing No: 121140399
Beneficiary: Tatum, LLC
Beneficiary Account No: 3300599791
Reference Company/Invoice in Body of Payment

**Disclaimers and Limitation of Liability.** Tatum disclaims all representations and warranties, whether express, implied or statutory, including, but not limited to any warranties of quality, performance, merchantability, or fitness of use or purpose. Without limiting the foregoing, Tatum makes no representation or warranties with respect to Beckett, his qualifications, or the services to be provided by Beckett.

The liability of Tatum in any and all categories and for any and all causes arising under this agreement, whether based in contract, tort, negligence, strict liability or otherwise, will, in the aggregate, not exceed $1,000. In no event will Tatum be liable for incidental, consequential, punitive, indirect or special damages, including, without limitation, interruption or loss of business, profit or goodwill.

**Miscellaneous.** This agreement constitutes the entire agreement between the parties with regard to the subject matter hereof and supersedes any and all prior agreements, arrangements and understandings, whether oral or written, relating to the subject matter. This agreement will be governed by and construed in accordance with the laws of the State of Georgia, without regard to conflicts of laws provisions. Neither party will be deemed to have waived any rights or remedies accruing under this agreement unless such waiver is in writing and signed by the party electing to waive the right or remedy.

Please sign below and return a signed copy of this agreement to indicate agreement with its terms and conditions.

[Signatures Appear on Following Page]

*WJSbock 11/2/2009*

Sincerely,

Tatum, LLC

_____  11/2/09

Mark C. Neilson, Managing Partner – San Diego


Accepted and agreed to by:

NutraCea Inc.

_____  11/2/2009

W. John Short, Chief Executive Officer

_____  11/2/2009

Daniel Beckett, an Individual

## AMENDMENT

This Amendment (this "Amendment") is made and entered by and between NutraCea Inc. (the "Company") and Tatum, LLC ("Tatum").

WHEREAS, the Company and Tatum are parties to that certain Interim Services Agreement, dated July 26, 2009 (the "Services Agreement"), pursuant to which Tatum provides William Cadigan ("Cadigan") to serve as the Company's Vice President of Finance pursuant to that certain Schedule to Interim Services Agreement, dated July 26, 2009, between the Company and Tatum (the "Schedule" and together with the Services Agreement, the "Agreement"); and

WHEREAS, the Company and Tatum desire to amend the Agreement, all in accordance with the terms and conditions of this Amendment;

NOW, THEREFORE, the Company and Tatum hereby agree as follows:

1.     Capitalized terms used herein and not otherwise defined shall have the meaning set forth in the Agreement.

2.     This Amendment shall be effective as of November 1, 2009 (the "Effective Date").

3.     The first sentence of the Section of the Schedule titled "Fees" shall be deleted in its entirety and replaced with the following:

> The Company will pay to Tatum a fee of $32,500 per month for the Tatum Resource.

4.     Except as modified by this Amendment, the terms and conditions of the Agreement shall remain in full force and effect, however, if any term or condition of the Agreement conflicts with or is otherwise inconsistent with any term or condition of this Amendment, the terms and conditions of this Amendment shall prevail.

IN WITNESS WHEREOF, the parties hereto have caused their duly authorized representatives to execute this Amendment.

TATUM:                                         COMPANY:

Tatum, LLC                                     NutraCea Inc.

By: _____          By: _____
Name: _____          Name: _____
Title: _____          Title: _____

**FORRESTER, WORTH & GREEN, PLLC**
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012-1927
Telephone (602) 271-4250
Facsimile (602) 271-4300
S. Cary Forrester (006342)
E-mail SCF@FWLAWAZ.COM
Kristen M. Green (019802)
E-mail KMG@FWGLAWYERS.COM

Attorneys for the Debtor

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 |
| NUTRACEA, a California corporation, | 2:09-bk-28817-CGC |
| Debtor. | **DECLARATION OF MARK NEILSON IN SUPPORT OF DEBTOR'S APPLICATION FOR APPROVAL OF EMPLOYMENT OF WILLIAM CADIGAN AND TATUM, LLC,** |

MARK NEILSON hereby declares under penalty of perjury as follows:

1.     I am the Managing Partner of the San Diego office of Tatum, LLC ("**Tatum**"). Tatum, among other things, provides professional, experienced interim executive services to businesses facing strategic challenges such as the need to reorganize.

2.     On or about November 10, 2009, Debtor filed its voluntary petition under chapter 11 of the United States Bankruptcy Code.

3.     Debtor has requested that Tatum continue to provide the services of William Cadigan as vice president of finance, with the understanding that he may be promoted to CFO in the near future. Debtor initially hired Tatum to provide such services by and through that certain Interim Services Agreement dated July 26, 2009, the attached schedule of the same date, and the amendment thereto dated November 1, 2009 (together, the "**Second ISA**").

4.    To the best of my knowledge, Tatum is not a creditor or insider of Debtor.

5.    To the best of my knowledge, Tatum is not and was not an investment banker for Debtor.

6.    To the best of my knowledge, Tatum is not and was not, within two years before the Petition Date, an employee of Debtor, provided; however, Tatum was a service provider to Debtor within the last two years before the Petition Date.

7.    To the best of my knowledge, Tatum does not have an interest materially adverse to the estate or to any class of creditors or equity security holders, whether by reason of any direct or indirect relationship to, connection with, or interest in Debtor or for any other reason, provided; however, Tatum does have the following relationships with certain of Debtor's creditors which are unrelated to this bankruptcy case:

(a)    In 2008, Tatum provided interim controller services to Atrinsic, Inc.;

(b)    Federal Express/Kinkos is a current client of Tatum. The services Tatum provides or provided to Federal Express/Kinkos include providing interim financial personnel, general accounting advice, SOX testing, and revenue stream analysis;

(c)    Dell USA, LP is a current client of Tatum. The services Tatum provides or provided to Dell USA, LP include invoicing float reporting, consignment reconciliation, treasury analysis and other financial consulting services.

(d)    Waste Management is a current client of Tatum. The services Tatum provides or provided to Waste Management include audit support services and SOX compliance services and other general financial consulting services.

8.    In view of the foregoing, as noted above, I believe Tatum is "disinterested" within the meaning of Bankruptcy Code § 327(a) and 11 U.S.C. § 101(14) and qualified to provide interim professional financial services to Debtor pursuant to § 327(a).

-2-

9.     Tatum has agreed to continue to provide interim professional financial services to Debtor at the monthly rate of $32,500, plus expenses, payable in advance, as set forth in the Second ISA, and subject to Bankruptcy Court approval.

10.     Other than any compensation that William Cadigan will receive from Tatum in connection with the provision of services under the Second ISA, Tatum has not entered into any agreement to share compensation that may be awarded in this case and understands such compensation will be determined and paid in accordance with 11 U.S.C. §§ 328.

DATED this ___ day of November, 2009.

_____
MARK NEILSON

**FORRESTER, WORTH & GREEN, PLLC**
3636 NORTH CENTRAL AVENUE, SUITE 700
PHOENIX, ARIZONA 85012-1927
TELEPHONE (602) 271-4250
FACSIMILE (602) 271-4300
S. CARY FORRESTER (006342)
E-MAIL SCF@FWLAWAZ.COM
KRISTEN M. GREEN (019802)
E-MAIL KMG@FWGLAWYERS.COM

ATTORNEYS FOR THE DEBTOR

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 |
| NUTRACEA, a California corporation, | 2:09-bk-28817-CGC |
| Debtor. | **DECLARATION OF WILLIAM CADIGAN IN SUPPORT OF DEBTOR'S APPLICATION FOR APPROVAL OF EMPLOYMENT OF WILLIAM CADIGAN AND TATUM, LLC** |

WILLIAM CADIGAN hereby declares under penalty of perjury as follows:

1.      I am a partner of Tatum, LLC ("**Tatum**"). Tatum, among other things, provides professional, experienced interim executive services to businesses facing strategic challenges such as the need to reorganize.

2.      On or about November 10, 2009, Debtor filed its voluntary petition under chapter 11 of the United States Bankruptcy Code.

3.      Debtor has requested that Tatum continue to provide my services as vice president of finance, with the understanding that I may be promoted to CFO in the near future.  Debtor initially hired Tatum to provide such services by and through that certain Interim Services

Agreement dated July 26, 2009, the attached schedule of the same date, and the amendment thereto dated November 1, 2009 (together, the "**Second ISA**").

4.  To the best of my knowledge, I am not a creditor or insider of Debtor.

5.  To the best of my knowledge, I am not and was not an investment banker for Debtor.

6.  To the best of my knowledge, I am not and was not, within two years before the Petition Date, an employee of Debtor, provided; however, Tatum was a service provider to Debtor within the last two years before the Petition Date.

7.  To the best of my knowledge, I do not have an interest materially adverse to the estate or to any class of creditors or equity security holders, whether by reason of any direct or indirect relationship to, connection with, or interest in Debtor or for any other reason, provided; however, Tatum does have the following relationships with certain of Debtor's creditors which are unrelated to this bankruptcy case:

    (a)    In 2008, Tatum provided interim controller services to Atrinsic, Inc.;

    (b)    Federal Express/Kinkos is a current client of Tatum. The services Tatum provides or provided to Federal Express/Kinkos include providing interim financial personnel, general accounting advice, SOX testing, and revenue stream analysis;

    (c)    Dell USA, LP is a current client of Tatum. The services Tatum provides or provided to Dell USA, LP include invoicing float reporting, consignment reconciliation, treasury analysis and other financial consulting services.

    (d)    Waste Management is a current client of Tatum. The services Tatum provides or provided to Waste Management include audit support services and SOX compliance services and other general financial consulting services.

1    8.    In view of the foregoing, as noted above, I believe that I am "disinterested" within

2    the meaning of Bankruptcy Code § 327(a) and 11 U.S.C. § 101(14) and qualified to provide

3    interim professional financial services to Debtor pursuant to § 327(a).

4    9.    Tatum has agreed to continue to provide my services to Debtor at the monthly rate

5    of $32,500, plus expenses, payable in advance, as set forth in the Second ISA, and subject to

6    Bankruptcy Court approval.

7    10.    Other than any compensation that I will receive from Tatum in connection with the

8    provision of services under the Second ISA, Tatum has not entered into any agreement to share

9    compensation that may be awarded in this case and understands such compensation will be

10   determined and paid in accordance with 11 U.S.C. §§ 328.

11         DATED this 17th day of November, 2009.

12

13

14                                  WILLIAM CADIGAN

15

16

17

18

19

20

21

22

23

24

25

- 3 -

AETNA
P.O.BOX 88860
CHICAGO, IL 60695

Henderikus Hoogenkemp
Grote Leof 36
6581 JG Malden
Netherlands

Weintraub Genshlea Chediak Law
Corporation
400 Capitol Mall, 11th Fl.
Sacramento, CA 95814

Audio Video Resources Inc.
4323 E Cotton Center Blvd
Phoenix, AZ85040

Herbalscience Singapore PTE LTD
1 Science Park Rd. #01-07
The Capricorn
Singapore Science Park II
Singapore

Wellington Foods
3250 E. 29th Street
Long Beach, CA 90806

Jim Michaels
Brycon Inc.
6150 W. Chandler Blvd
Suite #39
Chandler, AZ 85226

Louisiana Rice Mill
102 South 13th Street.
Mermentau, LA 70556

Farmers Rice Milling Company, Inc.
c/o Jeffrey W. Peters
Corporate Counsel
P.O. Box 788
Baton Rouge, LA 70821

PHD Technologies, LLC
3234 Bayberry Road
Ames, IA 50014

McDermott, Will & Emery
600 13th Street, N.W.
Washington, DC 20005-3096

Galllagher & Kennedy, P.A.
John R. Clemency
2575 E.Camelback Rd. Suite 1100
Phoenix, Arizona 85016

Farmers Rice Cooperative
1760 Creekside Oaks Dr. Suite #200
Sacramento, CA 95833

Osborn Maledon, P.A.
IOLTA Account
2929 N. Central Ave.
Phoenix, AZ 85012

Richard J. Cuellar
Office of U.S. Trustee
230 North First Avenue, Suite 204
Phoenix, Arizona 85003

Farmers Rice Milling CO. Inc.
P.O. Box 98509
Baton Rouge, LA 70884

Primeshares
261 Fifth Avenue, 22nd Floor
New York, NY 10016
Attention: RVS

Todd Tuggle
Jennings Strouss & Salmon
The Collier Center, 11th Fl.
201 East Washington Street
Phoenix, Arizona 85004-2385

Foley & Lardner, LLP
35th Floor, One Century Plaza
2029 Century Park East
Los, Angeles, CA 90067

MSS Technologies, Inc
3202 E Harbour Dr.
Suite One
Phoenix, AZ 85034

Bryson Law Firm, PLC
7227 E. Baseline Rd. Suite 114
Mesa, AZ 85209

Chad L. Schexnayder
Christopher R. Stovall
Jennings Haug, et al
2800 N. Central Ave., #1800
Phoenix, AZ 85004

Navigant Consulting, Inc.
30 S. Wacker Drive
Suite 3100
Chicago, Il 60606

Gerald Shelley
FENNEMORE CRAIG P.C.
3003 N. Central Ave, Suite 2600
Phoenix, Arizona 85012-2913

Hadasit Medical and Research Svc. and
Development Ltd.
P.O. Box 12000
Jeruselum Israel 91120

Sacramento Bag MFG. CO.
440 N. Pioneer Ave.
P.O. Box 1788
Woodland, CA 95776

Linda Boyle
tw telecom inc
10475 Park Meadows Drive, #400
Littleton, CO 80124

Baruch Halpern
Halpern Capital
18851 Northeast 29th Ave
Miami, FL 33180

Bart
TREA, Inc
4216 S. 36th Place
Phoenix, AZ 85040