**FORRESTER & WORTH, PLLC**
3636 NORTH CENTRAL AVENUE, SUITE 700
PHOENIX, ARIZONA 85012-1927
TELEPHONE (602) 271-4250
FACSIMILE (602) 271-4300
S. CARY FORRESTER (006342)
E-MAIL SCF@FWLAWAZ.COM

ATTORNEYS FOR THE DEBTOR

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>NUTRACEA, a California corporation,<br><br>Debtor. | Chapter 11<br><br>2:09-bk-28817-CGC<br><br>**MOTION TO APPROVE BIDDING PROCEDURES RELATING TO DEBTOR'S MOTION FOR AUTHORITY TO (1) SELL ASSETS AND ASSIGN PURCHASE ORDERS ASSOCIATED WITH INFANT CEREAL BUSINESS FREE AND CLEAR OF LIENS (2) ENTER INTO TOLL PROCESSING AGREEMENT AND (3) PAY FINDER'S FEE**<br><br>Hearing Date: TBD<br>Hearing Time: TBD<br>Hearing Room: 601 |

Debtor hereby moves the court for the entry of an order approving certain bid procedures and providing certain bid protections relating to the proposed sale of the assets and the proposed assignment of the postpetition purchase orders associated with its infant cereal business, free and clear of all liens, claims, and interests. Contemporaneously herewith, Debtor is filing a motion to approve the sale and assignment (the "**Sale Motion**") and requests that the court approve the bid procedures and related bid protections as detailed below in advance of the hearing on that

motion. This bid procedures motion is more fully set forth and supported by the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

1. As part of its ongoing efforts to stabilize its operations and address its cash requirements, Debtor has identified certain non-core assets that it intends to sell or otherwise monetize. Among these non-core assets are: (a) the Debtor's infant cereal business; (b) the equipment, machinery, tools and related assets intended for use in that business, located primarily in Debtor's Phoenix, Arizona facility; (c) certain inventory located at its Dillon, Montana facility; (d) certain related customer and supplier lists; and (e) a limited amount of intellectual property, all as more fully described in the Agreement described below (collectively the "**Assets**").

2. On or about February 11, 2010, Debtor and Buyer entered into an Asset Purchase Agreement (the "**Agreement**"). A copy of the Agreement is attached to the Sale Motion and is incorporated herein by reference. Capitalized terms used herein but not defined are intended to have the same meaning as in the Agreement. Subject in all respects to the terms and conditions set forth therein, the Agreement provides for the sale of the Purchased Assets for the cash purchase price of $3,900,000. An earnest money deposit of $250,000 will be paid by Buyer into escrow upon entry of the Bid Procedures Order that is in compliance with the terms of the Agreement. The balance of the Purchase Price will be paid at Closing. The Agreement also calls for the assignment of the Assigned Contracts to Buyer.

3. In addition to the cash Purchase Price of up to $3.9 million, Buyer will pay an as-yet-to-be-determined amount for all infant cereal inventory on hand as of the close of escrow. Inventory will be valued at cost, and the addition to the purchase price will be determined by a physical inventory to be conducted approximately four days before the close of escrow.

4. The sale of the Assets and transfer of the Assigned Contracts is to be free and clear of all liens, claims and interests, and is subject to higher and better offers.

5. Pursuant to the terms of the Agreement, Debtor requests that the court approve the following bidding procedures and buyer protections (the "**Bid Procedures**"):

    A. <u>Overview</u>. The Bid Procedures describe, among other things, the assets to be sold, the manner in which bidders and bids will be qualified, the conduct of the competitive bidding process, and the ultimate selection and approval of the successful bidder (collectively the "**Competitive Bidding Process**"). Debtor intends to consult with counsel for the official committee of unsecured creditors (the "**Committee**") throughout the Competitive Bidding Process. Any disagreement as to the interpretation or application of the Bid Procedures will be submitted to and resolved by the Court.

    B. <u>Assets to be Sold</u>. The Purchased Assets to be sold and assigned include the Equipment, Inventory, Assigned Contracts, and certain intellectual property as described in Schedule 2.1(e) of the Agreement relating solely to Debtor's infant cereal business, together with certain related intellectual property, all as more particularly set forth and defined in Sections 2.1 of the Agreement.

    C. <u>"As Is, Where Is"</u>. The sale of the Purchased Assets, or any portion thereof, will be on an "as is, where is" basis, without representation or warranty, express or implied, of any kind, nature or description by Debtor, its agents, or estate except, with respect to the Buyer, to the extent set forth in the Agreement and, with respect to any other Successful Bidder, to the extent set forth in the relevant purchase agreement with such Successful Bidder approved by the Court.

D. <u>Free of Any and All Claims and Interests</u>.  Except to the extent otherwise set forth in the relevant purchase agreement of the Successful Bidder or ordered by the Court, all of Debtor's right, title, and interest in and to the Purchased Assets, or any portion thereof, will be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests on and/or against the Purchased Assets (collectively, the "**Claims and Interests**"), with all such Claims and Interests to attach to the net proceeds of the sale of the Purchased Assets.

E. <u>Participation Requirements</u>.  Unless otherwise ordered by the court, or as otherwise determined by Debtor (in consultation with counsel for the Committee), each person other than Buyer who wishes to participate in the Competitive Bidding Process (each, a "**Potential Bidder**"), as a condition to participating in the Competitive Bidding Process, must deliver to Debtor, Debtor's counsel, and the Committee's counsel (collectively, the "**Notice Parties**"):

    i) <u>Confidentiality Agreement</u>.  An executed confidentiality agreement (to be delivered prior to the distribution of any confidential information by Debtor to a Potential Bidder) that shall not be on terms that, in Debtor's reasonable judgment, are more favorable to the Potential Bidder than the confidentiality agreement executed by Buyer;

    ii) <u>Financing Commitment</u>.  Written evidence of a firm, irrevocable commitment for financing and current financial statements of the Potential Bidder (audited, if available), or, if the Potential Bidder is an entity formed for the purpose of acquiring the Purchased Assets, such financial statements of the equity holder(s) of the Potential Bidder, or such other form of financial disclosure and credit-quality support or enhancement that will allow Debtor and its financial advisors, in consultation with the Committee, to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the transactions contemplated by the written proposal; and,

    iii) <u>Written Offer</u>.  A written proposal setting forth (a) the purchase price, (b) any Purchased Assets expected to be excluded or any additional assets desired to be included, (c) the structure of the

financing of the transactions contemplated by the proposal (including the sources of the financing for the purchase price), (d) any anticipated corporate, stockholder, internal or regulatory consents or approvals required to close the transactions contemplated by the proposal, together with the anticipated time frame and any anticipated impediments for obtaining such consents or approvals, (e) the proposed number of employees of Seller who will become employees of the Potential Bidder, and any proposed measures associated with their continued employment, and (f) any conditions to closing that the Potential Bidder may wish to impose in addition to those set forth in the Agreement.

iv) <u>Qualified Bidders</u>. A Potential Bidder that substantially complies with the foregoing requirements, as determined by Debtor in its reasonable business judgment, and whose financial information demonstrates to Debtor's reasonable satisfaction (after consultation with the Committee and Debtor's financial advisors) the financial capability of the Potential Bidder to consummate the proposed transactions, will be deemed a "**Qualified Bidder**." Notwithstanding the foregoing, Debtor may request such additional information from a Potential Bidder as necessary to evaluate the Potential Bidder's ability to consummate the proposed transactions and to fulfill its obligations in connection therewith, and such Potential Bidder shall be obligated to provide such additional information as a precondition to becoming a Qualified Bidder and participating in the Competitive Bidding Process.

v) <u>Copies to Buyer</u>. Debtor shall deliver to Buyer copies of all proposals submitted by Potential Bidders within one (1) business day after receipt thereof.

F. <u>Due Diligence.</u> No due diligence for anyone other than a Qualified Bidder who has submitted a Qualified Bid (as defined below) will continue after the Bid Deadline. Debtor will provide to Buyer prompt access to all due diligence materials and other information provided to any Qualified Bidder that were not previously made available to Buyer.

G. <u>Bid Deadline.</u> A Qualified Bidder that desires to make a bid will deliver written copies of its bid to the Notice Parties in accordance with the notice provision set above so as to be received no later than three (3) business days prior to the hearing on the Sale Motion (the "**Bid Deadline**"). Debtor, after

consultation with the Committee, may extend the Bid Deadline once or successively, provided, that for any such extension beyond one (1) business day, Debtor will have obtained the prior written consent of Buyer, which consent shall not be unreasonably withheld. Debtor will promptly notify Buyer and all Qualified Bidders of any extension of the Bid Deadline.

    H.    <u>Qualified Bid.</u> A bid submitted will be considered a "**Qualified Bid**" only if it is submitted by a Qualified Bidder in accordance with these Bidding Procedures and complies with all of the following:

    i)    <u>Irrevocable Bid</u>. The bid must state that it is irrevocable until the selection of the Successful Bidder; provided, that if such Qualified Bidder is selected as the Successful Bidder, its offer will remain irrevocable until the closing of the Sale to the Successful Bidder;

    ii)    <u>Marked Agreement</u>. The bid must include a duly authorized and executed agreement proposed by such Qualified Bidder (the "**Marked Agreement**"), including the purchase price of the Purchased Assets expressed in U.S. Dollars (the "**Offered Purchase Price**"), together with all exhibits and schedules thereto, as well as copies of such materials marked to show those amendments and modifications to the Agreement, which amendments and modifications shall, in Debtor's reasonable business judgment, be no less favorable than the terms and conditions set forth in the Agreement;

    iii)    <u>Financial Ability</u>. The bid must include written evidence of a firm, irrevocable commitment for financing, or other evidence of ability to consummate the proposed transaction, that will allow Debtor (in consultation with the Committee) to make a reasonable determination as to such Qualified Bidder's financial and other capabilities to consummate the transactions contemplated by the Marked Agreement;

    iv)    <u>No Due Diligence or Financing Contingency</u>. The bid must not be conditioned on the outcome of unperformed due diligence by such Qualified Bidder or any financing contingency;

    v)    <u>Higher and Better Offer</u>. The bid must have a value to Debtor, in Debtor's reasonable business judgment (after consultation with its financial advisors and the Committee), that is greater than or equal to the sum of (a) the Purchase Price (as defined in the Agreement), plus (b) the amount of the Expense Reimbursement, plus (c) $25,000;

-6-
Case 2:09-bk-28817-CGC    Doc 240    Filed 02/11/10    Entered 02/11/10 18:11:38    Desc
Main Document    Page 6 of 16

vi) <u>Duly Authorized</u>. The bid must include evidence, in form and substance reasonably satisfactory to Debtor, of authorization and approval from such Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution and delivery of, and closing under, the Marked Agreement;

vii) <u>Non-Refundable Deposit</u>. The bid must be accompanied by a good faith deposit in the form of a wire transfer (to a bank account specified by Debtor or to Escrow Agent) in an amount equal to $250,000, that is non-refundable in the event of a default by the bidder; and

viii) <u>Timeliness</u>. The bid must be received by the Bid Deadline.

ix) <u>Buyer/APA Deemed Qualified</u>. Notwithstanding the foregoing, Buyer will be deemed a Qualified Bidder, and the APA will be deemed a Qualified Bid, for all purposes in connection with the Competitive Bidding Process and the Sale.

I. <u>Due Diligence Expense Reimbursement.</u> Recognizing the value and benefits that Buyer has provided to Debtor by entering into the Agreement, as well as Buyer's expenditure of time, energy and resources, Debtor has agreed that if Buyer is not the Successful Bidder, Debtor will, in the circumstances set forth in the Agreement, pay to Buyer an amount equal to the lesser of: (a) its actual fees, costs and expenses incurred in connection with the Agreement, due diligence on the Purchased Assets and Assigned Contracts (including financial, tax, legal, operations, accounting, employee, customer and valuation due diligence), obtaining entry of the Bid Procedures Order or Sale Order, participating in the Competitive Bidding Process and any other transactions or actions relating thereto, including, without limitation, attorneys' fees, consulting fees and advisory fees; or (b) One Hundred Fifty Thousand Dollars ($150,000) (hereinafter referred to as the "Due Diligence Expense Reimbursement"), which shall constitute an allowed, administrative expense against the Debtor's estate under Section 503(b)

of the Bankruptcy Code, payable in accordance with the terms of the Agreement, Bid Procedures Order and Sale Order.

J. <u>Competitive Bidding Process.</u> Copies of all Qualified Bids will be delivered to Buyer when they are determined to be Qualified Bids but no later than two (2) calendar days prior to the hearing on the Sale Motion. At least one (1) calendar day prior to the hearing on the Sale Motion, Debtor will provide copies to Buyer and all other Qualified Bidders of the Qualified Bid which Debtor believes, in its reasonable business judgment after consultation with the Committee, is the highest or otherwise best offer (the "**Starting Bid**"). The Competitive Bidding Process will run in accordance with the following procedures:

i) <u>No Unqualified Bids</u>. Only Buyer and other Qualified Bidders will be entitled to make bids during the Competitive Bidding Process;

ii) <u>No Collusion</u>. Buyer and each other Qualified Bidder will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale;

iii) <u>Minimum Bid Increments</u>. Bidding will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder that improves upon such Qualified Bidder's immediately prior Qualified Bid, by an incremental value to the estate of at least $25,000 over the prior bid (in each case net of the amount of any Due Diligence Expense Reimbursement that would be payable if such Qualified Bid was the Successful Bid);

iv) <u>Credit Bid by Buyer</u>. Buyer shall be entitled to credit the amount of the Due Diligence Expense Reimbursement, i.e., $150,000, in connection with making any subsequent bids during the Competitive Bidding Process; and

v) <u>Alternative Consideration</u>. In the event that a Qualified Bid contains non-cash consideration, the assumption of any debt or liabilities of Debtor (other than to the extent already expressly set forth in the APA), a proposal to pay any amounts to Debtor based on future

contingencies, or otherwise provide Debtor with any form of consideration other than cash at closing (collectively, "**Alternative Consideration**"), Debtor, in consultation with the Committee and Debtor's advisors, shall announce during the Competitive Bidding Process what value Debtor reasonably believes any such Alternative Consideration will have for purposes of determining the actual, present value of any such bid.

vi) <u>Supplemental Procedures</u>. Notwithstanding any of the foregoing, Debtor, after consultation with Debtor's advisors, and the Committee, may adopt such other rules for the Competitive Bidding Processes as it reasonably anticipates will result in the highest or best value for the estate and which are not inconsistent with any Bankruptcy Court order, provided that such other rules are not inconsistent with the Bid Procedures set forth above or the Bid Procedures Order entered by the Court and are communicated to all participants during or prior to the Competitive Bidding Process.

K. <u>Selection of Successful Bid.</u> Prior to the conclusion of the Competitive Bidding Process, Debtor, in consultation with the Committee, will (a) review and evaluate each Qualified Bid and (b) identify the highest or otherwise best offer for the Purchased Assets (the "**Successful Bid**" and the bidder(s) making such bid, the "**Successful Bidder**"). Such determination will be final, subject to approval by the Bankruptcy Court. In the event that Buyer is not the Successful Bidder, Buyer will serve as back-up bidder under the terms and conditions set forth in the Agreement or such higher and better terms as Buyer may designate on the record at the hearing on the Sale Motion; provided, however, that Buyer shall not be obligated to hold itself out as a backup bidder, without Buyer's consent, later than March 31, 2010, and shall be entitled to the return of its deposit upon the expiration of any such backup bid.

6. The Bid Procedures were negotiated at arms length with Buyer and their approval will facilitate the orderly sale and assignment of the Purchased Assets. The Debtor believes that the Bid Procedures are appropriate under Sections 105 and 363 of the Bankruptcy Code to ensure

that the bidding process is fair and reasonable and will yield the maximum value for its estate and creditors under the circumstances.

7. The Bid Procedures are designed to maximize the value received for the Purchased Assets and Assigned Contracts by facilitating a competitive bidding process in which all potential bidders are encouraged to participate and submit competing bids. The Bid Procedures provide potential bidders with sufficient notice and an opportunity to acquire the information necessary to submit a timely and informed bid. At the same time, the Bid Procedures provide the Debtor with the opportunity to consider all competing bids and, in consultation with the Committee, to select the highest and best offer received.

8. Pursuant to Bankruptcy Rule 6004(f)(1), a sale of property outside the ordinary course of business may be by private sale or by public auction. The Debtor believes that having the ability to offer the Due Diligence Expense Reimbursement to the Buyer, and thereby facilitate a Competitive Bidding Process, will maximize the realizable value of the Purchased Assets for the benefit of the Debtor's estate, creditors and other parties in interest.

9. Under the terms of the Agreement, Buyer will be entitled to payment of the Due Diligence Expense Reimbursement, as described above, if (a) the Sale Order is not entered through no fault of the Buyer; (b) the Purchased Assets are sold to a competing bidder; or, (c) Debtor willfully breaches the Agreement. The amount to be reimbursed includes Buyer's actual expenses incurred in negotiating and drafting the Agreement, performing due diligence on the Purchased Assets, obtaining entry of the required court orders approving the bidding procedures and the sale, participating in the competitive bidding process, and any related matters. The amount of the reimbursement is capped at $150,000 and the Agreement provides that, if the reimbursement is not approved by the Court, the purchase price will automatically be reduced by that amount.

10. Debtor agreed to seek this court's approval of the Due Diligence Expense Reimbursement in order to give Buyer an incentive to serve as stalking horse bidder and incur the extensive fees and costs associated with negotiating and documenting the Agreement, performing the necessary due diligence, and participating in the bankruptcy sales process.

11. The Due Diligence Expense Reimbursement benefits Debtor and the estate by inducing Buyer to serve as a stalking horse bidder. The stalking horse bid, as embodied by the Agreement, sets a floor on the sales price the Debtor will receive and promotes competitive bidding by giving others increased confidence in the value of the Purchased Assets as a result of Buyer's due diligence. Without approval of the Due Diligence Expense Reimbursement, Buyer would not have agreed to enter into the Agreement and become a stalking horse bidder. Without the presence of a stalking horse bidder, competitive bidding on the Purchased Assets likely would be materially reduced. The availability of the Due Diligence Expense Reimbursement, therefore, is necessary in order to provide Buyer with some assurance that it will be compensated for the time and expense it has spent (and may in the future spend) putting together its offer for the Purchased Assets and the risk that arises from participating in the Competitive Bidding Process as the stalking horse bidder.

12. Most of the case law on buyer protections of this sort focuses on so-called "break-up fees", which are more onerous than due diligence expense reimbursements, in that they are not limited to the actual expenses incurred by the stalking horse bidder. But even break-up fees are recognized as a normal, and in many cases necessary, component of sales outside the ordinary course of business under section 363 of the Bankruptcy Code. *See, e.g., Official Committee of Subordinated Bondholders v. Integrated Resources, Inc.*, 147 B.R. 650 (S.D.N.Y.1992) (break-up fee may be necessary to convince a "white knight" to enter the bidding by compensating it for the risk it is undertaking); *In re Fin. News Network, Inc.*, 126 B.R. 152 (S.D.N.Y. 1991), *appeal dismissed*, 931 F.2d 217 (2d Cir. 1991); *In re Crowthers*

*McCall Pattern, Inc.*, 114 B.R. 877, 879 (Bankr. S.D.N.Y. 1990) (break-up fees in merger agreement approved); *In re 995 Fifth Ave. Assoc., L.P.*, 96 B.R. 24, 28-29 (Bankr. S.D.N.Y. 1989) ($500,000 break-up fee not unreasonable absent evidence that it chilled bidding).

13. Bankruptcy courts regularly authorize expense reimbursement under the "business judgment rule" which, essentially, prohibits second-guessing the actions of management taken in good faith and in the exercise of sound business judgment. *Id.* at 52; *see also*, *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527 (3d Cir. 1999) (break-up fee or expense reimbursement benefits the estate if it promotes competitive bidding or induces stalking horse bidder to research value of assets and convert that value to a dollar figure upon which others can rely).

14. To be approved, however, Debtor must demonstrate that the Due Diligence Expense Reimbursement benefits the estate. *Calpine* at 533. Debtor submits that, without the expense reimbursement, it would not have obtained the highest or best offer for the Purchased Assets or the downside protection afforded by the stalking horse bid.

15. In the present case, the maximum reimbursement is approximately 3.85% of the stalking horse bid. This is of the same order of magnitude as buyer protection fees approved in other cases. *See, e.g., Consumer News & Business Channel P'ship v. Fin. News Network, Inc. (In re Fin. News Network, Inc.)*, 980 F.2d 165, 167 (2d Cir. 1992) (break-up fee of 5.5% is fair); *LTV Aerospace & Defense Co. v. Thomson-CSF, S.A. (In re Chateugay Corp.)*, 1998 B.R. 848, 861 (S.D.N.Y. 1996) (enforcing reverse break-up fee of 4.4%).

16. The Due Diligence Expense Reimbursement was negotiated (at arms length) in place of a combined break-up fee and expense reimbursement that Debtor believes would have ended-up being much larger and more potentially costly to the estate. Further, Debtor believes that it was necessary to induce Buyer to play the role of stalking horse bidder and was essential to facilitate the sale and assignment of the Purchased Assets in a timely manner.

17. In sum, Debtor submits that the Due Diligence Expense Reimbursement will not chill bidding, is fair, reasonable and necessary under the circumstances, and provides a demonstrable benefit to the estate. Therefore, it meets the requirements of the business judgment rule and Section 503(b) of the Bankruptcy Code.

**WHEREFORE,** for all the reasons set forth above, Debtor requests that the court approve the Bid Procedures and Due Diligence Expense Reimbursement as set forth above and otherwise contemplated by the Agreement and grant such other and further relief as may be appropriate under the circumstances.

DATED this 11th day of February 2010.

FORRESTER & WORTH, PLLC

SCF (006342)
S. Cary Forrester
Attorneys for the Debtor

Copy mailed on the 12th day of February
and/or emailed this 11th day of February,
2010 to all those on the
service list attached hereto:

/s/ Carrie Lawrence
Carrie Lawrence

AETNA
P.O.BOX 88860
CHICAGO, IL 60695

Audio Video Resources Inc.
4323 E Cotton Center Blvd
Phoenix, AZ 85040

Jim Michaels
Brycon Inc.
6150 W. Chandler Blvd , Suite #39
Chandler, AZ 85226

PHD Technologies, LLC
3234 Bayberry Road
Ames, IA 50014

Farmers Rice Cooperative
1760 Creekside Oaks Dr. Ste 200
Sacramento, CA 95833

Farmers Rice Milling CO. Inc.
P.O. Box 98509
Baton Rouge, LA 70884

Foley & Lardner, LLP
35th Floor, One Century Plaza
2029 Century Park East
Los, Angeles, CA 90067

Chad L. Schexnayder
Christopher R. Stovall
Jennings Haug, et al
2800 N. Central Ave., #1800
Phoenix, AZ 85004

Hadasit Medical and Research Svc.
and Development Ltd.
P.O. Box 12000
Jeruselum Israel 91120

Baruch Halpern
Halpern Capital
18851 Northeast 29th Ave
Miami, FL 33180

Henderikus Hoogenkemp
Grote Leof 36
6581 JG  Malden
Netherlands

Herbalscience Singapore PTE LTD
1 Science Park Rd.  #01-07
The Capricorn
Singapore Science Park II
Singapore

Louisiana Rice Mill
102 South 13th Street.
Mermentau, LA 70556

McDermott, Will & Emery
600 13th Street, N.W.
Washington, DC 20005-3096

Osborn Maledon, P.A.
IOLTA Account
2929 N. Central Ave.
Phoenix, AZ 85012

Primeshares
Attention: RVS
261 Fifth Avenue, 22nd Floor
New York, NY 10016

MSS Technologies, Inc
3202 E Harbour Dr., Suite One
Phoenix, AZ 85034

Navigant Consulting, Inc.
30 S. Wacker Drive, Suite 3100
Chicago, Il 60606

Sacramento Bag MFG. CO.
P.O. Box 1788
Woodland, CA  95696-6122

Bart
TREA, Inc
4216 S. 36th Place
Phoenix, AZ 85040

Weintraub Genshlea Chediak Law
Corporation
400 Capitol Mall, 11th Fl.
Sacramento, CA 95814

Wellington Foods
3250 E. 29th Street
Long Beach, CA 90806

Farmers Rice Milling Company, Inc.
c/o Jeffrey W. Peters
Corporate Counsel
P.O. Box 788
Baton Rouge, LA 70821

Galllagher & Kennedy, P.A.
John R. Clemency
2575 E. Camelback Rd., Ste 1100
Phoenix, AZ 85016

Richard J. Cuellar
Office of U.S. Trustee
230 N. First Avenue, Suite 204
Phoenix, AZ 85003

Todd Tuggle
Jennings Strouss & Salmon
201 E. Washington St., 11th Fl.
Phoenix, AZ 85004-2385

Bryson Law Firm, PLC
7227 E. Baseline Rd., Suite 114
Mesa, AZ 85209

Gerald Shelley
FENNEMORE CRAIG P.C.
3003 N. Central Ave, Suite 2600
Phoenix, AZ 85012-2913

Linda Boyle
tw telecom inc
10475 Park Meadows Drive, #400
Littleton, CO 80124

Drane, Freyer and Lapins
Attn.: Wendy Freyer, Esq.150 North
Wacker Drive, 8th Fl.
Chicago, IL 60606

James E. Cross, Esq.
Brenda K. Martin, Esq.
OSBORN MALEDON, P.A.
2929 N. Central Ave., Suite 2100
Phoenix, AZ 85012

Stephen L. Williamson Montgomery,
Barnett, Brown, Read, Hammond &
Mintz, L.L. P.
3300 Energy Centre,
1100 Poydras St.
New Orleans, LA 70163

Thomas G. Luikens, Esq.
Joseph M. Hillegas, Jr., Esq.
Ayers & Brown, PC
4227 N. 32nd Street, 1st Floor
Phoenix, AZ 85018

Sarah D. Moyed
5670 Wilshire Boulevard, 11th Floor
Los Angeles, CA 90036

James R. Wakefield, Esq.
Charles P. Murawski, Esq.
Cummins & White, LLP
2424 SE Bristol Street, Suite 300
Newport Beach, CA 92660

David W. Creeggan, Esq.
Trainor Fairbrook
980 Fulton Avenue
Sacramento, CA 95825

Aaron A. Tigert, Esq.
Vita Plus Corporation
2514 Fish Hatchery Rd
P.O. Box 259126
Madison, WI 53725

Carolyn J. Johnsen
Jennings, Strouss & Salmon, P.L.C.
201 E. Washington St., 11th Floor
Phoenix, AZ 85004-2385

S. Cary Forrester
Forrester & Worth, PLLC
3636 N. Central Ave., Suite 700
Phoenix, AZ 85012

Eric D. Gere
Keith F. Overholt
Jennings, Strouss & Salmon, P.L.C.
201 E. Washington St., 11th Floor
Phoenix, AZ 85004

Outhouse Plumbing Company, Inc.
938 N. Marble Street
Gilbert, AZ 85234

Brent H. Bryson
Bryson Law Firm, PLC
7227 E. Baseline Road, Suite 114
Mesa, AZ 85209

Ganado Painting & Wall Covering,
Inc.
c/o Steven D. Morse, Statutory
Agent
27120 N. 63rd Place
Scottsdale, AZ 85262

Kevin Blakely
Gammage & Burnham PLC
Two N. Central, 18th Floor
Phoenix, AZ 85004

RBG Construction Company, LLC
c/o Raymond B. Gonzales
P.O. Box 309
Glendale, AZ 85311-0309

Stephen E. Jackson
Warner Angle Hallam Jackson &
Formanek PLC
3550 N. Central Ave., Suite 500
Phoenix, AZ 85012

F Rodgers Corporation
c/o Adrian R. Wolff
601 S. 54th Street #10
Chandler, AZ 85226

Timothy I. McCulloch
Gordon & Rees, LLP
111 W. Monroe Street, Suite 111
Phoenix, AZ 85003

Far West Insulation Contracting,
Inc.
Brad M. Thies
Clark Hill, PLC
16427 N. Scottsdale Rd., Suite 210
Scottsdale, AZ 85254

D. Kim Lough
Travis A. Pacheco
Jennings, Haug & Cunningham, LLP
2800 N. Central Ave., Suite 1800
Phoenix, AZ 85004

Brycon Residential Construction Co.
c/o Greg Thomas – Statutory Agent
2424 East Arrowhead Trail
Gilbert, Arizona 85297

Brycon Residential Construction Co.
6150 W. Chandler Blvd., #39
Chandler, Arizona 85226

HD Supply, Inc.
c/o Corporate Creations Networks I
8655 E. Via de Ventura, Suite G-200
Scottsdale, AZ 85258

Timothy Ducar
Dodge, Anderson, Mableson, Steiner,
Jones & Horowitz, Ltd.
3003 N. Central Ave., Suite 1800
Phoenix, AZ 85012

Ms. Shuang Liu
Biostime
187 Lianguang Road East District
Economic & Technological
Development District
Guangzhou, China 510730

Jessica Rolph
Happy Baby
25 Washington Street, Suite 601
Brooklyn, NY 11201

Rondi Prescott
Healthy Times
13200 Kirkham Way, #104
Poway, CA 92064

Charleen O'Riley
Rafferty's Garden
Unit 1, 17 Napier Road
P.O. Box 28099
Havelock North
New Zealand 4157

Shannan Swanson
Tasty Baby
22741 Pacific Coast Highway
Suite 310
Malibu, CA 90265

Noreen Dumann
Safeway
P.O. Box 29093
Phoenix, AZ 85038

Wenhui Zhang
Biostime
4065 Ambergate Pl.
Dublin, CA 94568

Fei Luo
Biostime
233 Tianhe N. Road
Room 1110 Citic Plaza
GuangZhou, China 510613

Greg Johnson
Maple Island
2497 Seventh Avenue East
Suite 105
North St. Paul, MN 55109

Tom Carlucci
Rice Plex Global Inc.
P.O. Box 388
New Gretna, NJ 08224

Patty McPeak
Nanacea
100 Rock Lane
El Dorado Hills, CA 95762

Brad Edson
6021 E. Lafayette Blvd.
Scottsdale, AZ 85251

Bright Foods
Attn: Li Yuanzhi
No. 620 Damuqiao Road
Shanghai, PRC