**SO ORDERED.**




**Dated: February 18, 2010**

**CHARLES G. CASE, II**
**U.S. Bankruptcy Judge**

**FORRESTER & WORTH, PLLC**
3636 NORTH CENTRAL AVENUE, SUITE 700
PHOENIX, ARIZONA 85012-1927
TELEPHONE (602) 271-4250
FACSIMILE (602) 271-4300
S. CARY FORRESTER (006342)
E-MAIL SCF@FWLAWAZ.COM

ATTORNEYS FOR THE DEBTOR

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>NUTRACEA, a California corporation,<br><br>Debtor. | Chapter 11<br><br>2:09-bk-28817-CGC<br><br>**ORDER GRANTING MOTION TO APPROVE BIDDING PROCEDURES FOR SALE OF ASSETS ASSOCIATED WITH DEBTOR'S INFANT CEREAL BUSINESS**<br><br>Hearing Date: February 18, 2010<br>Hearing Time: 10:00 a.m.<br>Hearing Room: 601 |

This matter came before the court on February 18th, 2010 at the hour of 10:00.m. for hearing on the Motion to Approve Bidding Procedures Relating to Debtor's Motion for Authority to (1) Sell Assets and Assign Purchase Orders Associated with Infant Cereal Business Free and Clear of Liens (2) Enter into Toll Processing Agreement and (3) Pay Finder's Fee (the "**Motion**"). Debtor appeared through counsel S. Cary Forrester, of Forrester & Worth, PLLC. The Official Committee of Unsecured Creditors (the "**Committee**") appeared through counsel Carolyn J. Johnsen, of Jennings, Strouss & Salmon, P.L.C. Kerry, Inc. appeared telephonically through counsel Craig E. Reimer of Mayer Brown LLP. Other appearances, if any, are as noted on the record. The court has considered the Motion, the representations of counsel, and the record before it and finds

that the Motion was duly noticed to creditors and interested parties, the deadline for objections has passed, and no objections have been filed. Based upon the foregoing, and good cause appearing,

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:**

1. Notice of the hearing on the Motion was provided by email and/or first class mail to all those on the Official Notice Service List on February 12, 2010. Such notice is good and sufficient under the circumstances, complies in full with all notice requirements arising under the Federal Rules of Bankruptcy Procedure and applicable authority, and no other or further notice is necessary to obtain the relief requested by the Motion.

2. Based on representations by the Debtor, the Court finds and concludes that notice of the hearing on Debtor's Motion for Authority to (1) Sell Assets and Assign Purchase Orders Associated with Infant Cereal Business Free and Clear of Liens (2) Enter into Toll Processing Agreement and (3) Pay Finder's Fee (the "**Sale Motion**") was provided by email and/or first class mail on February 12, 2010 to: (a) all those on the Master Mailing List; (b) all additional parties on the Official Notice Service List; (c) all parties known or believed by Debtor to have an interest in purchasing the Purchased Assets; (d) all parties asserting liens, claims or interests in the Purchased Assets (as defined below) and their counsel, if known; and, (e) all parties to the Assigned Contracts (as defined below). Such notice is good and sufficient under the circumstances, complies in full with all notice requirements arising under the Federal Rules of Bankruptcy Procedure and applicable authority, and no other or further notice will be required to obtain the relief requested by the Sale Motion, provided that Debtor shall promptly post a copy of the Sale Motion on its website.

**IT IS HEREBY ORDERED,** that the following bidding procedures and buyer protections will govern the competitive bidding process on the proposed sale of the assets used in Debtor's infant cereal business (the "**Assets**") and the assignment of certain related postpetition purchase orders (the "**Assigned Contracts**" and, collectively with the Assets, the "**Purchased Assets**") to Kerry, Inc. ("**Buyer**"), all as described more fully in that certain Asset Purchase Agreement (the "**Agreement**") between Debtor and Kerry, Inc., dated February 11, 2010, a copy of which is attached to the Motion as Exhibit "A":

A. Overview. These bid procedures (the "**Bid Procedures**") describe, among other things, the assets to be sold, the manner in which bidders and bids will be qualified, the conduct of the competitive bidding process, and the ultimate selection and approval of the successful bidder (collectively the "**Competitive Bidding Process**"). Debtor intends to consult with counsel for the official committee of unsecured creditors (the "**Committee**") throughout the Competitive Bidding Process. Any disagreement as to the interpretation or application of the Bid Procedures will be submitted to and resolved by the Court.

B. Assets to be Sold and Assigned. The assets to be sold and assigned (the "**Purchased Assets**") include the Equipment, Inventory, Assigned Contracts, and certain intellectual property as described in Schedule 2.1(e) of the Agreement relating solely to Debtor's infant cereal business, together with certain related intellectual property, all as more particularly set forth and defined in Section 2.1 of the Agreement.

C. "As Is, Where Is". The sale of the Purchased Assets, or any portion thereof, will be on an "as is, where is" basis, without representation or warranty, express or implied, of any kind, nature or description by Debtor, its agents, or estate except, with respect to the Buyer, to the extent set forth in the Agreement and, with respect to any

other Successful Bidder (as defined in Paragraph K, below), to the extent set forth in the relevant purchase agreement with such Successful Bidder approved by the Court.

D. Free of Any and All Claims and Interests. Except to the extent otherwise set forth in the relevant purchase agreement of the Successful Bidder or ordered by the Court, all of Debtor's right, title, and interest in and to the Purchased Assets, or any portion thereof, will be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests on and/or against the Purchased Assets (collectively, the "**Claims and Interests**"), with all such Claims and Interests to attach to the net proceeds of the sale of the Purchased Assets.

E. Participation Requirements. Unless otherwise ordered by the Court or as otherwise determined by Debtor (in consultation with counsel for the Committee), each person other than Buyer who wishes to participate in the Competitive Bidding Process (each, a "**Potential Bidder**"), as a condition to participating in the Competitive Bidding Process, must deliver to Debtor, Debtor's counsel, and the Committee's counsel (collectively, the "**Notice Parties**"):

i) Confidentiality Agreement. An executed confidentiality agreement (to be delivered prior to the distribution of any confidential information by Debtor to a Potential Bidder) that shall not be on terms that, in Debtor's reasonable judgment, are more favorable to the Potential Bidder than the confidentiality agreement executed by Buyer;

ii) Financing Commitment. Written evidence of a firm, irrevocable commitment for financing and current financial statements of the Potential Bidder (audited, if available), or, if the Potential Bidder is an entity formed for the purpose of acquiring the Purchased Assets, such financial statements of the equity holder(s) of the Potential Bidder, or such other form of

financial disclosure and credit-quality support or enhancement that will allow Debtor and its financial advisors, in consultation with the Committee, to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the transactions contemplated by the written proposal;

iii) Written Offer. A written proposal setting forth (a) the purchase price, (b) any Purchased Assets expected to be excluded or any additional assets desired to be included, (c) the structure of the financing of the transactions contemplated by the proposal (including the sources of the financing for the purchase price), (d) any anticipated corporate, stockholder, internal or regulatory consents or approvals required to close the transactions contemplated by the proposal, together with the anticipated time frame and any anticipated impediments for obtaining such consents or approvals, (e) the proposed number of employees of Seller who will become employees of the Potential Bidder, and any proposed measures associated with their continued employment, and (f) any conditions to closing that the Potential Bidder may wish to impose in addition to those set forth in the Agreement;

iv) Qualified Bidders. A Potential Bidder that substantially complies with the foregoing requirements, as determined by Debtor in its reasonable business judgment, and whose financial information demonstrates to Debtor's reasonable satisfaction (after consultation with the Committee and Debtor's financial advisors) the financial capability of the Potential Bidder to consummate the proposed transactions, will be deemed a "**Qualified Bidder**." Notwithstanding the foregoing, Debtor or the Committee may

request such additional information from a Potential Bidder as necessary to evaluate the Potential Bidder's ability to consummate the proposed transactions and to fulfill its obligations in connection therewith, and such Potential Bidder shall be obligated to provide such additional information as a precondition to becoming a Qualified Bidder and participating in the Competitive Bidding Process; and,

v) Copies to Buyer. Debtor shall deliver to Buyer copies of all proposals submitted by Potential Bidders within one (1) business day after receipt thereof.

F. Due Diligence. No due diligence for anyone other than a Qualified Bidder who has submitted a Qualified Bid (as defined below) will continue after the Bid Deadline. Debtor will provide to Buyer prompt access to all due diligence materials and other information provided to any Qualified Bidder that were not previously made available to Buyer.

G. Bid Deadline. Except as otherwise ordered by the Court, a Qualified Bidder that desires to make a bid will deliver written copies of its bid to the Notice Parties in accordance with the notice provision set above so as to be received no later than three (3) business days prior to the hearing on the Sale Motion (the "**Bid Deadline**"). Debtor, after consultation with the Committee, may extend the Bid Deadline once or successively, provided, that for any such extension beyond one (1) business day, Debtor will have obtained the prior written consent of Buyer, which consent shall not be unreasonably withheld. Debtor will promptly notify Buyer and all Qualified Bidders of any extension of the Bid Deadline.

H. Qualified Bid. A bid submitted will be considered a "**Qualified Bid**" only if it is submitted by a Qualified Bidder in accordance with these Bidding Procedures and complies with all of the following:

i) Irrevocable Bid. The bid must state that it is irrevocable until the selection of the Successful Bidder; provided, that if such Qualified Bidder is selected as the Successful Bidder, its offer will remain irrevocable until the closing of the Sale to the Successful Bidder;

ii) Marked Agreement. The bid must include a duly authorized and executed agreement proposed by such Qualified Bidder (the "**Marked Agreement**"), including the purchase price of the Purchased Assets expressed in U.S. Dollars (the "**Offered Purchase Price**"), together with all exhibits and schedules thereto, as well as copies of such materials marked to show those amendments and modifications to the Agreement, which amendments and modifications shall, in Debtor's reasonable business judgment, be no less favorable than the terms and conditions set forth in the Agreement;

iii) Financial Ability. The bid must include written evidence of a firm, irrevocable commitment for financing, or other evidence of ability to consummate the proposed transaction, that will allow Debtor (in consultation with the Committee) to make a reasonable determination as to such Qualified Bidder's financial and other capabilities to consummate the transactions contemplated by the Marked Agreement;

iv) No Due Diligence or Financing Contingency. The bid must not be conditioned on the outcome of unperformed due diligence by such

Qualified Bidder or any financing contingency;

v) Higher and Better Offer. The bid must have a value to Debtor, in Debtor's reasonable business judgment (after consultation with its financial advisors and the Committee), that is greater than or equal to the sum of (a) the Purchase Price (as defined in the Agreement), plus (b) the amount of the Due Diligence Expense Reimbursement in the presumed amount of $150,000, plus (c) $25,000;

vi) Duly Authorized. The bid must include evidence, in form and substance reasonably satisfactory to Debtor, of authorization and approval from such Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution and delivery of, and closing under, the Marked Agreement;

vii) Non-Refundable Deposit. The bid must be accompanied by a good faith deposit in the form of a wire transfer (to a bank account specified by Debtor or to Escrow Agent) in an amount equal to $250,000, that is non-refundable in the event of a default by the bidder; and

viii) Timeliness. The bid must be received by the Bid Deadline.

ix) Buyer/Agreement Deemed Qualified. Notwithstanding the foregoing, Buyer will be deemed a Qualified Bidder, and the Agreement will be deemed a Qualified Bid, for all purposes in connection with the Competitive Bidding Process and the Sale.

I. Due Diligence Expense Reimbursement. Recognizing the value and benefits that Buyer has provided to Debtor by entering into the Agreement, as well as Buyer's expenditure of time, energy and resources, Debtor has agreed that if Buyer is not

the Successful Bidder, Debtor will, in the circumstances set forth in the Agreement, pay to Buyer an amount equal to the lesser of: (a) its actual fees, costs and expenses incurred in connection with the Agreement, due diligence on the Purchased Assets and Assigned Contracts (including financial, tax, legal, operations, accounting, employee, customer and valuation due diligence), obtaining entry of the Bid Procedures Order or Sale Order, participating in the Competitive Bidding Process and any other transactions or actions relating thereto, including, without limitation, attorneys' fees, consulting fees and advisory fees; or (b) One Hundred Fifty Thousand Dollars ($150,000) (hereinafter referred to as the "**Due Diligence Expense Reimbursement**"), which shall constitute an administrative expense claim against Debtor's estate under Section 503(b) of the Bankruptcy Code, payable in accordance with the terms of the Agreement, Bid Procedures Order and Sale Order, provided, however, that the Due Diligence Expense Reimbursement shall not be paid to Buyer in the event that the Sale Order is not entered by the Court unless the Court finds that the Sale Order would have been entered but for the willful breach of the Agreement by the Debtor.

J. Competitive Bidding Process. Copies of all Qualified Bids will be delivered to Buyer when they are determined to be Qualified Bids but no later than two (2) calendar days prior to the hearing on the Sale Motion. At least one (1) calendar day prior to the hearing on the Sale Motion, Debtor will provide copies to Buyer and all other Qualified Bidders of the Qualified Bid which Debtor believes, in its reasonable business judgment after consultation with the Committee, is the highest or otherwise best offer (the "**Starting Bid**"). The Competitive Bidding Process will run in accordance with the following procedures:

i) No Unqualified Bids. Only Buyer and other Qualified Bidders will be entitled to make bids during the Competitive Bidding Process;

ii) No Collusion. Buyer and each other Qualified Bidder will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale;

iii) Minimum Bid Increments. Bidding will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder that improves upon such Qualified Bidder's immediately prior Qualified Bid, by an incremental value to the estate of at least $25,000 over the prior bid (in each case net of the amount of any Due Diligence Expense Reimbursement that would be payable if such Qualified Bid was the Successful Bid);

iv) Credit Bid by Buyer. Buyer shall be entitled to credit the amount of the Due Diligence Expense Reimbursement, i.e., $150,000, in connection with making any subsequent bids during the Competitive Bidding Process; and

v) Alternative Consideration. In the event that a Qualified Bid contains non-cash consideration, the assumption of any debt or liabilities of Debtor (other than to the extent already expressly set forth in the Agreement), a proposal to pay any amounts to Debtor based on future contingencies, or otherwise provide Debtor with any form of consideration other than cash at closing (collectively, "**Alternative Consideration**"), Debtor, in consultation with the Committee and Debtor's advisors, shall announce during the Competitive Bidding Process what value Debtor reasonably believes any such Alternative Consideration will have for purposes of determining the actual, present value of any such bid.

vi) Supplemental Procedures. Notwithstanding any of the foregoing, Debtor, after consultation with Debtor's advisors, and the Committee, may adopt such other rules for the Competitive Bidding Processes as it reasonably anticipates will result in the highest or best value for the estate and which are not inconsistent with any Bankruptcy Court order, provided that such other rules are not inconsistent with these Bid Procedures and are communicated to all participants during or prior to the Competitive Bidding Process.

K. Selection of Successful Bid. Prior to the conclusion of the Competitive Bidding Process, Debtor, in consultation with the Committee, will (a) review and evaluate each Qualified Bid and (b) identify the highest or otherwise best offer for the Purchased Assets (the "**Successful Bid**" and the bidder(s) making such bid, the "**Successful Bidder**"). Such determination will be final, subject to approval by the Bankruptcy Court. In the event that Buyer is not the Successful Bidder, Buyer will serve as back-up bidder under the terms and conditions set forth in the Agreement or such higher and better terms as Buyer may designate on the record at the hearing on the Sale Motion; provided, however, that Buyer shall not be obligated to hold itself out as a backup bidder, without Buyer's consent, later than March 31, 2010, and shall be entitled to the return of its deposit upon the expiration of any such backup bid.

**SIGNED AND DATED ABOVE**