**FORRESTER & WORTH, PLLC**
3636 NORTH CENTRAL AVENUE, SUITE 700
PHOENIX, ARIZONA 85012-1927
TELEPHONE (602) 271-4250
FACSIMILE (602) 271-4300
S. CARY FORRESTER (006342)
E-MAIL SCF@FWLAWAZ.COM

ATTORNEYS FOR THE DEBTOR

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>NUTRACEA, a California corporation,<br><br>Debtor. | Chapter 11<br><br>2:09-bk-28817-CGC<br><br>**MOTION TO APPROVE BIDDING PROCEDURES RELATING TO DEBTOR'S MOTION FOR AUTHORITY TO (1) SELL EQUINE BRANDS AND ASSOCIATED INVENTORY AND (2) ENTER INTO SUPPLY AGREEMENT WITH MANNA PRO PRODUCTS**<br><br>Hearing Date: TBD<br>Hearing Time: TBD<br>Hearing Room: 601 |

Debtor hereby moves the court for the entry of an order approving certain bid procedures and providing certain bid protections relating to the proposed sale of its Natural Glo, Satin Finish and Max-E-Glo trademarks and related inventory free and clear of all liens, claims, and interests. Contemporaneously herewith, Debtor is filing a motion to approve the sale (the "**Sale Motion**") and requests that the court approve the bid procedures and related bid protections as detailed below in advance of the hearing on that motion. This bid procedures motion is more fully set forth and supported by the following Memorandum of Points and Authorities.

MEMORANDUM OF POINTS AND AUTHORITIES

1. As part of its ongoing efforts to stabilize its operations and address its cash requirements, Debtor has identified certain non-core assets that it intends to sell or otherwise monetize. Among these non-core assets are: Debtor's Natural Glo, Satin Finish and Max-E-Glo trademarks and the good will and all other intellectual property rights associated with them (the "**Assets**") and all current and saleable inventory of bags, packaging materials and bagged inventory, excluding rice bran oil ("**Purchased Inventory**" and collectively with the Assets, the "**Purchased Assets**").

2. On or about March 16, 2010, Debtor and Manna Pro Products, LLC ("**Buyer**") entered into an Asset Purchase Agreement (the "**Agreement**"). A copy of the Agreement is attached to the Sale Motion as Exhibit "A" and is incorporated herein. Capitalized terms used herein but not defined are intended to have the same meaning as in the Agreement. Subject in all respects to the terms and conditions set forth therein, the Agreement provides for the sale of the Assets for the cash purchase price of $650,000. An earnest money deposit of $50,000 will be paid into escrow and the balance of the purchase price will be paid at Closing.

3. In addition to the cash purchase price, Buyer will pay an additional amount for all Purchased Inventory, which will be valued at Debtor's cost.

4. The sale of the Purchased Assets will be free and clear of all liens, claims and interests, and is subject to higher and better offers.

5. Debtor requests that the court approve the following bidding procedures and buyer protections (the "**Bid Procedures**"):

    A. <u>Overview</u>. The Bid Procedures describe, among other things, the manner in which bidders and bids will be qualified, the conduct of the competitive bidding process, and the ultimate selection and approval of the successful bidder (collectively the "**Competitive Bidding Process**"). Debtor intends to consult

with counsel for the official committee of unsecured creditors (the "**Committee**") throughout the Competitive Bidding Process. Any disagreement as to the interpretation or application of the Bid Procedures will be submitted to and resolved by the Court.

B. "As Is, Where Is". The sale of the Purchased Assets, or any portion thereof, will be on an "as is, where is" basis, without representation or warranty, express or implied, of any kind, nature or description by Debtor, its agents, or estate except, with respect to the Buyer, to the extent set forth in the Agreement and, with respect to any other Successful Bidder (as defined below), to the extent set forth in the relevant purchase agreement with such Successful Bidder approved by the Court.

C. Free of Any and All Claims and Interests. Except to the extent otherwise set forth in the relevant purchase agreement of the Successful Bidder or ordered by the Court, all of Debtor's right, title, and interest in and to the Purchased Assets, or any portion thereof, will be sold free and clear of all pledges, liens, security interests, encumbrances, claims (as claim is defined in Section 101(5) of the Bankruptcy Code), charges, options, and interests (collectively, the "**Claims and Interests**"), pursuant to 11 U.S.C. §§ 363(b), (f) and (m), including, without limitation, the liens, claims and interests described in the Sale Motion, with all such Claims and Interests to attach to the net proceeds of the sale of the Purchased Assets.

D. Participation Requirements. Unless otherwise ordered by the court, or as otherwise determined by Debtor (in consultation with counsel for the Committee), each person other than Buyer who wishes to participate in the Competitive Bidding Process (each, a "**Potential Bidder**"), as a condition to

participating in the Competitive Bidding Process, must deliver to Debtor, Debtor's counsel, and the Committee's counsel (collectively, the "**Notice Parties**"):

  i) <u>Confidentiality Agreement</u>. An executed confidentiality agreement (to be delivered prior to the distribution of any confidential information by Debtor to a Potential Bidder) that shall not be on terms that, in Debtor's reasonable judgment, are more favorable to the Potential Bidder than the confidentiality agreement executed by Buyer;

  ii) <u>Financing Commitment</u>. Written evidence of a firm, irrevocable commitment for financing and current financial statements of the Potential Bidder (audited, if available), or, if the Potential Bidder is an entity formed for the purpose of acquiring the Purchased Assets, such financial statements of the equity holder(s) of the Potential Bidder, or such other form of financial disclosure and credit-quality support or enhancement that will allow Debtor and its financial advisors, in consultation with the Committee, to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the transactions contemplated by the written proposal; and,

  iii) <u>Written Offer</u>. A written proposal setting forth (a) the purchase price, (b) any Purchased Assets expected to be excluded or any additional assets desired to be included, (c) the structure of the financing of the transactions contemplated by the proposal (including the sources of the financing for the purchase price), (d) any anticipated corporate, stockholder, internal or regulatory consents or approvals required to close the transactions contemplated by the proposal, together with the anticipated time frame and any anticipated impediments for obtaining such consents or approvals, and, (e) any conditions to closing that the Potential Bidder may wish to impose in addition to those set forth in the Agreement.

  iv) <u>Qualified Bidders</u>. A Potential Bidder that substantially complies with the foregoing requirements, as determined by Debtor in its reasonable business judgment, and whose financial information demonstrates to Debtor's reasonable satisfaction (after consultation with the Committee and Debtor's financial advisors) the financial capability of the Potential Bidder to consummate the proposed transactions, will be deemed a "**Qualified Bidder**." Notwithstanding the foregoing, Debtor may request such additional information from a Potential Bidder as necessary to evaluate the Potential Bidder's ability to consummate the proposed transactions and to fulfill its obligations in connection therewith, and such Potential Bidder shall be obligated to

provide such additional information as a precondition to becoming a Qualified Bidder and participating in the Competitive Bidding Process.

v) <u>Copies to Buyer</u>. Debtor shall deliver to Buyer copies of all proposals submitted by Potential Bidders within one (1) business day after receipt thereof.

E. <u>Due Diligence.</u> No due diligence for anyone other than a Qualified Bidder who has submitted a Qualified Bid (as defined below) will continue after the Bid Deadline. Debtor will provide to Buyer prompt access to all due diligence materials and other information provided to any Qualified Bidder that were not previously made available to Buyer.

F. <u>Bid Deadline.</u> A Qualified Bidder that desires to make a bid will deliver written copies of its bid to the Notice Parties in accordance with the notice provision set forth above so as to be received no later than three (3) business days prior to the hearing on the Sale Motion (the "**Bid Deadline**"). Debtor, after consultation with the Committee, may extend the Bid Deadline once or successively. Debtor will promptly notify Buyer and all Qualified Bidders of any extension of the Bid Deadline.

H. <u>Qualified Bid.</u> A bid submitted will be considered a "**Qualified Bid**" only if it is submitted by a Qualified Bidder in accordance with these Bidding Procedures and complies with all of the following:

i) <u>Irrevocable Bid</u>. The bid must state that it is irrevocable until the selection of the Successful Bidder; provided, that if such Qualified Bidder is selected as the Successful Bidder, its offer will remain irrevocable until the closing of the Sale to the Successful Bidder;

ii) <u>Marked Agreement</u>. The bid must include a duly authorized and executed agreement proposed by such Qualified Bidder (the "**Marked Agreement**"), including the purchase price of the Purchased Assets expressed in U.S. Dollars (the "**Offered Purchase Price**"), together with all exhibits and schedules thereto, as well as copies of such materials marked to show those amendments and modifications to

the Agreement, which amendments and modifications shall, in Debtor's reasonable business judgment, be no less favorable than the terms and conditions set forth in the Agreement;

iii) <u>Financial Ability</u>. The bid must include written evidence of a firm, irrevocable commitment for financing, or other evidence of ability to consummate the proposed transaction, that will allow Debtor (in consultation with the Committee) to make a reasonable determination as to such Qualified Bidder's financial and other capabilities to consummate the transactions contemplated by the Marked Agreement;

iv) <u>No Due Diligence or Financing Contingency</u>. The bid must not be conditioned on the outcome of unperformed due diligence by such Qualified Bidder or any financing contingency;

v) <u>Higher and Better Offer</u>. The bid must have a value to Debtor, in Debtor's reasonable business judgment (after consultation with its financial advisors and the Committee), that is greater than or equal to the sum of (a) the Purchase Price (as defined in the Agreement), plus (b) the amount of the Due Diligence Expense Reimbursement, plus (c) $10,000;

vi) <u>Duly Authorized</u>. The bid must include evidence, in form and substance reasonably satisfactory to Debtor, of authorization and approval from such Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution and delivery of, and closing under, the Marked Agreement;

vii) <u>Non-Refundable Deposit</u>. The bid must be accompanied by a good faith deposit in the form of a wire transfer (to a bank account specified by Debtor or to Escrow Agent) in an amount equal to $50,000, that is non-refundable in the event of a default by the bidder; and

viii) <u>Timeliness</u>. The bid must be received by the Bid Deadline.

ix) <u>Buyer/Agreement Deemed Qualified</u>. Notwithstanding the foregoing, Buyer will be deemed a Qualified Bidder, and the Agreement will be deemed a Qualified Bid, for all purposes in connection with the Competitive Bidding Process and the Sale.

I. <u>Due Diligence Expense Reimbursement.</u> Recognizing the value and benefits that Buyer has provided to Debtor by entering into the Agreement, as well as Buyer's expenditure of time, energy and resources, Debtor has agreed that

if Buyer is not the Successful Bidder, Debtor will, in the circumstances set forth in the Agreement, pay to Buyer an amount equal to the lesser of: (i) its actual costs and expenses incurred in connection with this Agreement, due diligence on the Purchased Assets (including financial, tax, legal, operations, accounting, employee, customer and valuation due diligence) and the transactions contemplated by the Agreement, including, without limitation, attorneys' fees, consulting fees and advisory fees, and (ii) Fifty Thousand Dollars ($50,000), payable in accordance with the terms of the Agreement, Bid Procedures Order and Sale Order.

J.  Competitive Bidding Process.  Copies of all Qualified Bids will be delivered to Buyer when they are determined to be Qualified Bids but no later than two (2) calendar days prior to the hearing on the Sale Motion. At least one (1) calendar day prior to the hearing on the Sale Motion, Debtor will provide copies to Buyer and all other Qualified Bidders of the Qualified Bid which Debtor believes, in its reasonable business judgment after consultation with the Committee, is the highest or otherwise best offer (the "**Starting Bid**"). The Competitive Bidding Process will run in accordance with the following procedures:

i)  No Unqualified Bids.  Only Buyer and other Qualified Bidders will be entitled to make bids during the Competitive Bidding Process;

ii)  No Collusion.  Buyer and each other Qualified Bidder will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale;

iii)  Minimum Bid Increments.  Bidding will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder that improves upon such Qualified Bidder's immediately prior Qualified Bid, by an incremental value to the estate of at least $10,000

over the prior bid (in each case net of the amount of any Due Diligence Expense Reimbursement that would be payable if such Qualified Bid was the Successful Bid);

   iv) <u>Credit Bid by Buyer</u>. Buyer shall be entitled to credit the amount of the Due Diligence Expense Reimbursement, i.e., $50,000, in connection with making any subsequent bids during the Competitive Bidding Process; and

   v) <u>Alternative Consideration</u>. In the event that a Qualified Bid contains non-cash consideration, the assumption of any debt or liabilities of Debtor (other than to the extent already expressly set forth in the Agreement), a proposal to pay any amounts to Debtor based on future contingencies, or otherwise provide Debtor with any form of consideration other than cash at closing (collectively, "**Alternative Consideration**"), Debtor, in consultation with the Committee and Debtor's advisors, shall announce during the Competitive Bidding Process what value Debtor reasonably believes any such Alternative Consideration will have for purposes of determining the actual, present value of any such bid.

   vi) <u>Supplemental Procedures</u>. Notwithstanding any of the foregoing, Debtor, after consultation with Debtor's advisors, and the Committee, may adopt such other rules for the Competitive Bidding Processes as it reasonably anticipates will result in the highest or best value for the estate and which are not inconsistent with any Bankruptcy Court order, provided that such other rules are not inconsistent with the Bid Procedures set forth above or the Bid Procedures Order entered by the Court and are communicated to all participants during or prior to the Competitive Bidding Process.

 K. <u>Selection of Successful Bid.</u> Prior to the conclusion of the Competitive Bidding Process, Debtor, in consultation with the Committee, will (a) review and evaluate each Qualified Bid and (b) identify the highest or otherwise best offer for the Purchased Assets (the "**Successful Bid**" and the bidder(s) making such bid, the "**Successful Bidder**"). Such determination will be final, subject to approval by the Bankruptcy Court. In the event that Buyer is not the Successful Bidder, Buyer may serve as back-up bidder at the original purchase

price or such higher price as Buyer may designate on the record at the hearing on the Motion.

6. The Bid Procedures will facilitate the orderly sale and assignment of the Purchased Assets. The Debtor believes that the Bid Procedures are appropriate under Sections 105 and 363 of the Bankruptcy Code to ensure that the bidding process is fair and reasonable and will yield the maximum value for its estate and creditors under the circumstances.

7. The Bid Procedures are designed to maximize the value received for the Purchased Assets by facilitating a competitive bidding process in which all potential bidders are encouraged to participate and submit competing bids. The Bid Procedures provide potential bidders with sufficient notice and an opportunity to acquire the information necessary to submit a timely and informed bid. At the same time, the Bid Procedures provide the Debtor with the opportunity to consider all competing bids and, in consultation with the Committee, to select the highest and best offer received.

8. Pursuant to Bankruptcy Rule 6004(f)(1), a sale of property outside the ordinary course of business may be by private sale or by public auction. The Debtor believes that having the ability to offer the Due Diligence Expense Reimbursement to the Buyer, and thereby facilitate a Competitive Bidding Process, will maximize the realizable value of the Purchased Assets for the benefit of the Debtor's estate, creditors and other parties in interest.

9. Under the terms of the Agreement, Buyer will be entitled to payment of the Due Diligence Expense Reimbursement, as described above, if and only if, Debtor closes on the sale of the Purchased Assets to another party who makes a higher and better offer, and provided that Buyer is, at that time, ready, willing and able to perform under the Agreement. The amount to be reimbursed is capped at $50,000.

10. Debtor agreed to seek this court's approval of the Due Diligence Expense Reimbursement in order to give Buyer an incentive to serve as stalking horse bidder and incur

the fees and costs associated with negotiating and documenting the Agreement, performing the necessary due diligence, and participating in the bankruptcy sales process.

11. The Due Diligence Expense Reimbursement benefits Debtor and the estate by inducing Buyer to serve as a stalking horse bidder. The stalking horse bid, as embodied by the Agreement, sets a floor on the sales price the Debtor will receive and promotes competitive bidding by giving others increased confidence in the value of the Purchased Assets as a result of Buyer's due diligence. Without approval of the Due Diligence Expense Reimbursement, Buyer would not have agreed to enter into the Agreement and become a stalking horse bidder. Without the presence of a stalking horse bidder, competitive bidding on the Purchased Assets likely would be materially reduced. The availability of the Due Diligence Expense Reimbursement, therefore, is necessary in order to provide Buyer with some assurance that it will be compensated for the time and expense it has spent (and may in the future spend) putting together its offer for the Purchased Assets and the risk that arises from participating in the Competitive Bidding Process as the stalking horse bidder.

12. Most of the case law on buyer protections of this sort focuses on so-called "break-up fees", which are more onerous than Due Diligence Expense Reimbursements, in that they are not limited to the actual expenses incurred by the stalking horse bidder. But even break-up fees are recognized as a normal, and in many cases necessary, component of sales outside the ordinary course of business under section 363 of the Bankruptcy Code. *See, e.g., Official Committee of Subordinated Bondholders v. Integrated Resources, Inc.*, 147 B.R. 650 (S.D.N.Y.1992) (break-up fee may be necessary to convince a "white knight" to enter the bidding by compensating it for the risk it is undertaking); *In re Fin. News Network, Inc.*, 126 B.R. 152 (S.D.N.Y. 1991), *appeal dismissed*, 931 F.2d 217 (2d Cir. 1991); *In re Crowthers McCall Pattern, Inc.*, 114 B.R. 877, 879 (Bankr. S.D.N.Y. 1990) (break-up fees in merger

agreement approved); *In re 995 Fifth Ave. Assoc., L.P.*, 96 B.R. 24, 28-29 (Bankr. S.D.N.Y. 1989) ($500,000 break-up fee not unreasonable absent evidence that it chilled bidding).

13. Bankruptcy courts regularly authorize expense reimbursement under the "business judgment rule" which, essentially, prohibits second-guessing the actions of management taken in good faith and in the exercise of sound business judgment. *Id.* at 52; *see also*, *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527 (3d Cir. 1999) (break-up fee or expense reimbursement benefits the estate if it promotes competitive bidding or induces stalking horse bidder to research value of assets and convert that value to a dollar figure upon which others can rely).

14. To be approved, however, Debtor must demonstrate that the Due Diligence Expense Reimbursement benefits the estate. *Calpine* at 533. Debtor submits that, without the expense reimbursement, it would not have obtained the highest or best offer for the Purchased Assets or the downside protection afforded by the stalking horse bid.

15. In the present case, the maximum reimbursement is approximately 7.69% of the stalking horse bid. This is of the same order of magnitude as buyer protection fees approved in other cases. *See, e.g., Consumer News & Business Channel P'ship v. Fin. News Network, Inc. (In re Fin. News Network, Inc.)*, 980 F.2d 165, 167 (2d Cir. 1992) (break-up fee of 5.5% is fair); *LTV Aerospace & Defense Co. v. Thomson-CSF, S.A. (In re Chateugay Corp.)*, 1998 B.R. 848, 861 (S.D.N.Y. 1996) (enforcing reverse break-up fee of 4.4%).

16. Debtor believes that the Due Diligence Expense Reimbursement was necessary to induce Buyer to play the role of stalking horse bidder and was essential to facilitate the sale and assignment of the Purchased Assets in a timely manner.

17. In sum, Debtor submits that the Due Diligence Expense Reimbursement will not chill bidding, is fair, reasonable and necessary under the circumstances, and provides a

demonstrable benefit to the estate. Therefore, it meets the requirements of the business judgment rule and Section 503(b) of the Bankruptcy Code.

**WHEREFORE,** for all the reasons set forth above, Debtor requests that the court approve the Bid Procedures and Due Diligence Expense Reimbursement as set forth above and otherwise contemplated by the Agreement and grant such other and further relief as may be appropriate under the circumstances.

DATED this 17th day of March 2010.

FORRESTER & WORTH, PLLC

/s/ SCF (006342)
S. Cary Forrester
Attorneys for the Debtor

Copy e-mailed March 17, 2010 and/or mailed March 18, 2010 to all those on the attached service list:

/s/ Carrie Lawrence
Carrie Lawrence

AETNA
P.O.BOX 88860
CHICAGO, IL 60695

Audio Video Resources Inc.
4323 E Cotton Center Blvd
Phoenix, AZ 85040

Jim Michaels
Brycon Inc.
6150 W. Chandler Blvd , Suite #39
Chandler, AZ 85226

PHD Technologies, LLC
3234 Bayberry Road
Ames, IA 50014

Farmers Rice Cooperative
1760 Creekside Oaks Dr. Ste 200
Sacramento, CA 95833

Farmers Rice Milling CO. Inc.
P.O. Box 98509
Baton Rouge, LA 70884

Foley & Lardner, LLP
35th Floor, One Century Plaza
2029 Century Park East
Los, Angeles, CA 90067

Chad L. Schexnayder
Christopher R. Stovall
Jennings Haug, et al
2800 N. Central Ave., #1800
Phoenix, AZ 85004

Hadasit Medical and Research Svc.
and Development Ltd.
P.O. Box 12000
Jeruselum Israel 91120

Baruch Halpern
Halpern Capital
18851 Northeast 29th Ave
Miami, FL 33180

Henderikus Hoogenkemp
Grote Leof 36
6581 JG Malden
Netherlands

Herbalscience Singapore PTE LTD
1 Science Park Rd. #01-07
The Capricorn
Singapore Science Park II
Singapore

Louisiana Rice Mill
102 South 13th Street.
Mermentau, LA 70556

McDermott, Will & Emery
600 13th Street, N.W.
Washington, DC 20005-3096

Osborn Maledon, P.A.
IOLTA Account
2929 N. Central Ave.
Phoenix, AZ 85012

Primeshares
Attention: RVS
261 Fifth Avenue, 22nd Floor
New York, NY 10016

MSS Technologies, Inc
3202 E Harbour Dr., Suite One
Phoenix, AZ 85034

Navigant Consulting, Inc.
30 S. Wacker Drive, Suite 3100
Chicago, Il 60606

Sacramento Bag MFG. CO.
P.O. Box 1788
Woodland, CA 95696-6122

Bart
TREA, Inc
4216 S. 36th Place
Phoenix, AZ 85040

Weintraub Genshlea Chediak Law
Corporation
400 Capitol Mall, 11th Fl.
Sacramento, CA 95814

Wellington Foods
3250 E. 29th Street
Long Beach, CA 90806

Farmers Rice Milling Company, Inc.
c/o Jeffrey W. Peters
Corporate Counsel
P.O. Box 788
Baton Rouge, LA 70821

Galllagher & Kennedy, P.A.
John R. Clemency
2575 E. Camelback Rd., Ste 1100
Phoenix, AZ 85016

Richard J. Cuellar
Office of U.S. Trustee
230 N. First Avenue, Suite 204
Phoenix, AZ 85003

Todd Tuggle
Jennings Strouss & Salmon
201 E. Washington St., 11th Fl.
Phoenix, AZ 85004-2385

Bryson Law Firm, PLC
7227 E. Baseline Rd., Suite 114
Mesa, AZ 85209

Gerald Shelley
FENNEMORE CRAIG P.C.
3003 N. Central Ave, Suite 2600
Phoenix, AZ 85012-2913

Linda Boyle
tw telecom inc
10475 Park Meadows Drive, #400
Littleton, CO 80124

Drane, Freyer and Lapins
Attn.: Wendy Freyer, Esq.150 North
Wacker Drive, 8th Fl.
Chicago, IL 60606

James E. Cross, Esq.
Brenda K. Martin, Esq.
OSBORN MALEDON, P.A.
2929 N. Central Ave., Suite 2100
Phoenix, AZ 85012

Sarah D. Moyed
5670 Wilshire Boulevard, 11th Floor
Los Angeles, CA 90036

Aaron A. Tigert, Esq.
Vita Plus Corporation
2514 Fish Hatchery Rd
P.O. Box 259126
Madison, WI 53725

Phil S. Flemming
YEN PILCH KOMADINA &
FLEMMING, P.C.
6017 N. 15th Street
Phoenix, Arizona 85014

ADM Alliance Nutrition
Judith A. Reynolds, Ph.D., P.A.S.
Equine Nutritionist
1000 N. 30th Street
Quincy, IL 62305

Stephen L. Williamson Montgomery,
Barnett, Brown, Read, Hammond &
Mintz, L.L.P.
3300 Energy Centre,
1100 Poydras St.
New Orleans, LA 70163

James R. Wakefield, Esq.
Charles P. Murawski, Esq.
Cummins & White, LLP
2424 SE Bristol Street, Suite 300
Newport Beach, CA 92660

Carolyn J. Johnsen
Jennings, Strouss & Salmon, P.L.C.
201 E. Washington St., 11th Floor
Phoenix, AZ 85004-2385

Purina Mills, LLC
Mr. Brad Schu
Vice President
Lifestyle Feeds Business Group
100 Danforth Drive
Gray Summit, MO 63039

Biovance Life Sciences
11515 North 84th Street
Omaha, NE 68122

Thomas G. Luikens, Esq.
Joseph M. Hillegas, Jr., Esq.
Ayers & Brown, PC
4227 N. 32nd Street, 1st Floor
Phoenix, AZ 85018

David W. Creeggan, Esq.
Trainor Fairbrook
980 Fulton Avenue
Sacramento, CA 95825

Gammage & Burnham P.L.C.
Attention: Jonathan A. Bennett
Two North Central Avenue
18th Floor
Phoenix, Arizona 85004

Star Milling Company, Inc.
Bill Cramer, President
24067 Water Street
P.O. Box 1987
Perris, CA 92572-1987

Cargill Animal Nutrition
Roy A. Johnson
Technology Development Manager
Horse & Specialty Products
12900 Whitewater Drive MS 14
Minnetonka, MN 55343