SO ORDERED.

Dated: April 09, 2010



_____
CHARLES G. CASE, II
U.S. Bankruptcy Judge

**FORRESTER & WORTH, PLLC**
3636 NORTH CENTRAL AVENUE, SUITE 700
PHOENIX, ARIZONA 85012-1927
TELEPHONE (602) 271-4250
FACSIMILE (602) 271-4300
S. CARY FORRESTER (006342)
E-MAIL SCF@FWLAWAZ.COM

ATTORNEYS FOR THE DEBTOR

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF ARIZONA

In re:

NUTRACEA, a California corporation,

Debtor.

Chapter 11

2:09-bk-28817-CGC

**ORDER GRANTING MOTION TO APPROVE BIDDING PROCEDURES RELATING TO DEBTOR'S MOTION FOR AUTHORITY TO (1) SELL EQUINE BRANDS AND ASSOCIATED INVENTORY AND (2) ENTER INTO SUPPLY AGREEMENT WITH MANNA PRO PRODUCTS**

Hearing Date: March 30, 2010
Hearing Time: 1:30 p.m.
Hearing Room: 601

This matter came before the court on March 30th, 2010 at 1:30 p.m. for hearing on the Motion to Approve Bidding Procedures Relating to Debtor's Motion for Authority to (1) Sell Equine Brands and Associated Inventory and (2) Enter into Supply Agreement with Manna Pro Products (the "**Motion**"). Debtor appeared through counsel S. Cary Forrester, of Forrester & Worth, PLLC. The Official Committee of Unsecured Creditors (the "**Committee**") appeared through counsel Carolyn J. Johnsen, of Jennings, Strouss & Salmon, P.L.C. Manna Pro Products appeared through counsel Sean P. O'Brien of Gust Rosenfeld, PLC. Other appearances, if any, are as noted on the record. The court has

considered the Motion, the representations of counsel, and the record before it and finds that the Motion was duly noticed to creditors and interested parties, the deadline for objections has passed, and no objections have been filed. Based upon the foregoing, and good cause appearing,

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:**

1. Notice of the hearing on the Motion was provided by email and/or first class mail to all those on the Official Notice Service List on March 18, 2010. Such notice is good and sufficient under the circumstances, complies in full with all notice requirements arising under the Federal Rules of Bankruptcy Procedure and applicable authority, and no other or further notice is necessary to obtain the relief requested by the Motion.

2. Based on representations by the Debtor, the Court finds and concludes that notice of the hearing on Debtor's Motion for Authority to (1) Sell Equine Brands and Associated Inventory and (2) Enter into Supply Agreement with Manna Pro Products (the "**Sale Motion**") was provided by email on March 19, 2010 and/or first class mail on March 22, 2010 to: (a) all those on the Master Mailing List; (b) all additional parties on the Official Notice Service List; (c) all parties known or believed by Debtor to have an interest in purchasing the Purchased Assets; (d) all parties asserting liens, claims or interests in the Purchased Assets (as defined below) and their counsel, if known; and, (e) all parties to the Assigned Contracts (as defined below). Such notice is good and sufficient under the circumstances, complies in full with all notice requirements arising under the Federal Rules of Bankruptcy Procedure and applicable authority, and no other or further notice will be required to obtain the relief requested by the Sale Motion, provided that Debtor shall promptly post a copy of the Sale Motion on its website.

**IT IS HEREBY ORDERED,** that the following bidding procedures and buyer protections will govern the competitive bidding process on the proposed sale of Debtor's Natural Glo, Satin Finish and Max-E-Glo trademarks and related inventory.

A. <u>Overview</u>. The Bid Procedures describe, among other things, the manner in which bidders and bids will be qualified, the conduct of the competitive bidding process, and the ultimate selection and approval of the successful bidder (collectively the "**Competitive Bidding Process**"). Debtor intends to consult with counsel for the official committee of unsecured creditors (the "**Committee**") throughout the Competitive Bidding Process. Any disagreement as to the interpretation or application of the Bid Procedures will be submitted to and resolved by the Court.

B. <u>"As Is, Where Is"</u>. The sale of the Purchased Assets, or any portion thereof, will be on an "as is, where is" basis, without representation or warranty, express or implied, of any kind, nature or description by Debtor, its agents, or estate except, with respect to the Buyer, to the extent set forth in the Agreement and, with respect to any other Successful Bidder (as defined below), to the extent set forth in the relevant purchase agreement with such Successful Bidder approved by the Court.

C. <u>Free of Any and All Claims and Interests</u>. Except to the extent otherwise set forth in the relevant purchase agreement of the Successful Bidder or ordered by the Court, all of Debtor's right, title, and interest in and to the Purchased Assets, or any portion thereof, will be sold free and clear of all pledges, liens, security interests, encumbrances, claims (as claim is defined in Section 101(5) of the Bankruptcy Code), charges, options, and interests (collectively, the "**Claims and Interests**"), pursuant to 11 U.S.C. §§

363(b), (f) and (m), including, without limitation, the liens, claims and interests described in the Sale Motion, with all such Claims and Interests to attach to the net proceeds of the sale of the Purchased Assets.

D. <u>Participation Requirements</u>. Unless otherwise ordered by the court, or as otherwise determined by Debtor (in consultation with counsel for the Committee), each person other than Buyer who wishes to participate in the Competitive Bidding Process (each, a "**Potential Bidder**"), as a condition to participating in the Competitive Bidding Process, must deliver to Debtor, Debtor's counsel, and the Committee's counsel (collectively, the "**Notice Parties**"):

i) <u>Confidentiality Agreement</u>. An executed confidentiality agreement (to be delivered prior to the distribution of any confidential information by Debtor to a Potential Bidder) that shall not be on terms that, in Debtor's reasonable judgment, are more favorable to the Potential Bidder than the confidentiality agreement executed by Buyer;

ii) <u>Financing Commitment</u>. Written evidence of a firm, irrevocable commitment for financing and current financial statements of the Potential Bidder (audited, if available), or, if the Potential Bidder is an entity formed for the purpose of acquiring the Purchased Assets, such financial statements of the equity holder(s) of the Potential Bidder, or such other form of financial disclosure and credit-quality support or enhancement that will allow Debtor and its financial advisors, in consultation with the Committee, to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the transactions contemplated by the written proposal; and,

iii) <u>Written Offer</u>. A written proposal setting forth (a) the purchase price, (b) any Purchased Assets expected to be excluded or any additional assets desired to be included, (c) the structure of the financing of the transactions contemplated by the proposal (including the sources of the financing for the purchase price), (d) any anticipated corporate, stockholder, internal or regulatory

consents or approvals required to close the transactions contemplated by the proposal, together with the anticipated time frame and any anticipated impediments for obtaining such consents or approvals, and, (e) any conditions to closing that the Potential Bidder may wish to impose in addition to those set forth in the Agreement.

    iv) <u>Qualified Bidders</u>. A Potential Bidder that substantially complies with the foregoing requirements, as determined by Debtor in its reasonable business judgment, and whose financial information demonstrates to Debtor's reasonable satisfaction (after consultation with the Committee and Debtor's financial advisors) the financial capability of the Potential Bidder to consummate the proposed transactions, will be deemed a "**Qualified Bidder**." Notwithstanding the foregoing, Debtor may request such additional information from a Potential Bidder as necessary to evaluate the Potential Bidder's ability to consummate the proposed transactions and to fulfill its obligations in connection therewith, and such Potential Bidder shall be obligated to provide such additional information as a precondition to becoming a Qualified Bidder and participating in the Competitive Bidding Process.

    v) <u>Copies to Buyer</u>. Debtor shall deliver to Buyer copies of all proposals submitted by Potential Bidders within one (1) business day after receipt thereof.

E. <u>Due Diligence.</u> No due diligence for anyone other than a Qualified Bidder who has submitted a Qualified Bid (as defined below) will continue after the Bid Deadline. Debtor will provide to Buyer prompt access to all due diligence materials and other information provided to any Qualified Bidder that were not previously made available to Buyer.

F. <u>Bid Deadline.</u> A Qualified Bidder that desires to make a bid will deliver written copies of its bid to the Notice Parties in accordance with the notice provision set forth above so as to be received no later than three (3) business days prior to the hearing on the Sale Motion (the "**Bid Deadline**"). Debtor, after consultation with the Committee, may extend the Bid

Deadline once or successively. Debtor will promptly notify Buyer and all Qualified Bidders of any extension of the Bid Deadline.

G. Qualified Bid. A bid submitted will be considered a "**Qualified Bid**" only if it is submitted by a Qualified Bidder in accordance with these Bidding Procedures and complies with all of the following:

i) Irrevocable Bid. The bid must state that it is irrevocable until the selection of the Successful Bidder; provided, that if such Qualified Bidder is selected as the Successful Bidder, its offer will remain irrevocable until the closing of the Sale to the Successful Bidder;

ii) Marked Agreement. The bid must include a duly authorized and executed agreement proposed by such Qualified Bidder (the "**Marked Agreement**"), including the purchase price of the Purchased Assets expressed in U.S. Dollars (the "**Offered Purchase Price**"), together with all exhibits and schedules thereto, as well as copies of such materials marked to show those amendments and modifications to the Agreement, which amendments and modifications shall, in Debtor's reasonable business judgment, be no less favorable than the terms and conditions set forth in the Agreement;

iii) Financial Ability. The bid must include written evidence of a firm, irrevocable commitment for financing, or other evidence of ability to consummate the proposed transaction, that will allow Debtor (in consultation with the Committee) to make a reasonable determination as to such Qualified Bidder's financial and other capabilities to consummate the transactions contemplated by the Marked Agreement;

iv) No Due Diligence or Financing Contingency. The bid must not be conditioned on the outcome of unperformed due diligence by such Qualified Bidder or any financing contingency;

v) Higher and Better Offer. The bid must have a value to Debtor, in Debtor's reasonable business judgment (after consultation with its financial advisors and the Committee), that is greater than or equal to the sum of (a) the Purchase Price (as defined in the Agreement), plus (b) the amount of the Due Diligence Expense Reimbursement, plus (c) $10,000;

vi) <u>Duly Authorized</u>. The bid must include evidence, in form and substance reasonably satisfactory to Debtor, of authorization and approval from such Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution and delivery of, and closing under, the Marked Agreement;

vii) <u>Non-Refundable Deposit</u>. The bid must be accompanied by a good faith deposit in the form of a wire transfer (to a bank account specified by Debtor or to Escrow Agent) in an amount equal to $50,000, that is non-refundable in the event of a default by the bidder; and

viii) <u>Timeliness</u>. The bid must be received by the Bid Deadline.

ix) <u>Buyer/Agreement Deemed Qualified</u>. Notwithstanding the foregoing, Buyer will be deemed a Qualified Bidder, and the Agreement will be deemed a Qualified Bid, for all purposes in connection with the Competitive Bidding Process and the Sale.

H. <u>Due Diligence Expense Reimbursement</u>. Recognizing the value and benefits that Buyer has provided to Debtor by entering into the Agreement, as well as Buyer's expenditure of time, energy and resources, Debtor has agreed that if Buyer is not the Successful Bidder, Debtor will, in the circumstances set forth in the Agreement, pay to Buyer an amount equal to the lesser of: (i) its actual costs and expenses incurred in connection with this Agreement, due diligence on the Purchased Assets (including financial, tax, legal, operations, accounting, employee, customer and valuation due diligence) and the transactions contemplated by the Agreement, including, without limitation, attorneys' fees, consulting fees and advisory fees, and (ii) Fifty Thousand Dollars ($50,000), payable in accordance with the terms of the Agreement, Bid Procedures Order and Sale Order.

I. <u>Competitive Bidding Process</u>. Copies of all Qualified Bids will be delivered to Buyer when they are determined to be Qualified Bids but no

later than two (2) calendar days prior to the hearing on the Sale Motion.  At least one (1) calendar day prior to the hearing on the Sale Motion, Debtor will provide copies to Buyer and all other Qualified Bidders of the Qualified Bid which Debtor believes, in its reasonable business judgment after consultation with the Committee, is the highest or otherwise best offer (the "**Starting Bid**").  The Competitive Bidding Process will run in accordance with the following procedures:

i) <u>No Unqualified Bids</u>.  Only Buyer and other Qualified Bidders will be entitled to make bids during the Competitive Bidding Process;

<u>ii</u>) <u>No Collusion</u>.  Buyer and each other Qualified Bidder will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale;

<u>iii</u>) <u>Minimum Bid Increments</u>.  Bidding will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder that improves upon such Qualified Bidder's immediately prior Qualified Bid, by an incremental value to the estate of at least $10,000 over the prior bid (in each case net of the amount of any Due Diligence Expense Reimbursement that would be payable if such Qualified Bid was the Successful Bid);

<u>iv</u>) <u>Credit Bid by Buyer</u>.  Buyer shall be entitled to credit the amount of the Due Diligence Expense Reimbursement, i.e., $50,000, in connection with making any subsequent bids during the Competitive Bidding Process; and

<u>v</u>) <u>Alternative Consideration</u>.  In the event that a Qualified Bid contains non-cash consideration, the assumption of any debt or liabilities of Debtor (other than to the extent already expressly set forth in the Agreement), a proposal to pay any amounts to Debtor based on future contingencies, or otherwise provide Debtor with any form of consideration other than cash at closing (collectively, "**Alternative Consideration**"), Debtor, in consultation with the Committee and Debtor's advisors, shall announce during the Competitive Bidding Process what value Debtor reasonably believes any such Alternative

Consideration will have for purposes of determining the actual, present value of any such bid.

    vi) <u>Supplemental Procedures</u>.  Notwithstanding any of the foregoing, Debtor, after consultation with Debtor's advisors, and the Committee, may adopt such other rules for the Competitive Bidding Processes as it reasonably anticipates will result in the highest or best value for the estate and which are not inconsistent with any Bankruptcy Court order, provided that such other rules are not inconsistent with the Bid Procedures set forth above or the Bid Procedures Order entered by the Court and are communicated to all participants during or prior to the Competitive Bidding Process.

J.    <u>Selection of Successful Bid</u>.  Prior to the conclusion of the Competitive Bidding Process, Debtor, in consultation with the Committee, will (a) review and evaluate each Qualified Bid and (b) identify the highest or otherwise best offer for the Purchased Assets (the "**Successful Bid**" and the bidder(s) making such bid, the "**Successful Bidder**").  Such determination will be final, subject to approval by the Bankruptcy Court.  In the event that Buyer is not the Successful Bidder, Buyer may serve as back-up bidder at the original purchase price or such higher price as Buyer may designate on the record at the hearing on the Motion.

**SIGNED AND DATED ABOVE**